STATE OF CONNECTICUT *v.* CHARLES BANTA, JR.
(4814)

STATE OF CONNECTICUT *v.* RONALD HABICH
(4831)

DUPONT, C. J., BORDEN and STOUGHTON, Js.

Argued February 9—decision released July 12, 1988

*G. Douglas Nash,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellants (defendants).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

BORDEN, J. Both defendants appeal from the judgments of conviction, after their joint trial before a jury, on charges of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and criminal possession of a pistol in violation of General Statutes § 53a-217 (a). Both defendants were found guilty of robbery in the first degree. The defendant Charles Banta, Jr., was found guilty of criminal possession of a pistol, while the defendant Ronald Habich was acquitted of that charge. On appeal, the defendants jointly claim that the trial court erred (1) in denying their motions to sever and to order separate trials on the robbery and criminal possession of a pistol offenses, (2) in denying the motion for a bifurcated trial on the criminal possession of a pistol charge, (3) in not suppressing evidence obtained during a search of the defendants' motel room and the car used by them, and (4) in instructing the jury on drawing inferences from circumstantial evidence. The defendants also claim that General Statutes § 53a-217 (a), which criminalizes the possession of a pistol by persons previously convicted of certain felonies, is unconstitutional. We find no error.

The jury could reasonably have found the following facts. On March 8, 1985, the victim, Joseph DeMartino, was in the process of readying his antique store for business. That evening, he arrived at his home at 345 Lighthouse Road in New Haven. He got out of his car carrying a large double shopping bag containing numerous items of his personal property, merchandise for his store, and items of jewelry for repair. He was also carrying about $2000 in cash and a wallet, and was wearing an assortment of jewelry. As he stepped away from his car, he was confronted by three men wearing black masks. The tallest of the three men was armed with a handgun and demanded that DeMartino surrender his belongings. DeMartino resisted and was struck on the side of the face with the gun. The three

assailants then took DeMartino's possessions, includ-
ing the jewelry he was wearing and the cash from his
pocket. DeMartino was left tied to a nearby chainlink
fence. The three men then fled in the direction of 325
Lighthouse Road, the house next door.

After DeMartino freed himself, he reported the rob-
bery to the police. The police arrived at DeMartino's
house and viewed the scene of the crime. The police
found a number of DeMartino's personal items scat-
tered about the driveway near DeMartino's car. They
also observed DeMartino's injuries, bloodstained cloth-
ing and torn shirt. DeMartino could not identify any
of his assailants.

A neighbor told the officers about three men and a
car she had seen earlier that evening. The men parked
their car on Morris Avenue, just around the corner from
the crime scene, and walked up Morris Avenue toward
Lighthouse Road, entering the rear yard of 325 Light-
house Road. Because the car was parked in a no parking
zone, the neighbor observed and recorded the automo-
bile's license number. Soon thereafter, she saw the car
driving away quickly without its headlights on. She
gave the license information to the police, and was able
to determine that it was a New Jersey license.

The police learned that the automobile belonged to
the defendant Habich and that he had been visiting the
defendant Banta. Early the next morning, the car was
located in a motel parking lot in West Haven. The motel
night manager confirmed that an individual, calling
himself "Frank Seals" but matching the description
of Banta, had registered for room 122 about one hour
earlier. At trial, the manager identified Banta as the
person who rented the room and identified Habich as
one of the two persons who later joined Banta in the
room. Banta admitted registering under a false name
and using a false address and license number when
registering.

Later that morning, the police searched room 122 pursuant to a search warrant, and found DeMartino's jewelry and personal effects. The defendants and another individual were in the room. The police found $1238 in Banta's front pockets and $336.70 on the person of the third individual. The police also found a .45 caliber automatic handgun in a desk drawer and a clip containing three rounds of .45 caliber ammunition on Banta's person. A subsequent search of Habich's automobile turned up more of DeMartino's personal effects. In addition, three black stocking masks were found in the car.

At trial, Banta testified. He did not deny that the trio was at DeMartino's that evening; rather, he denied that what happened was a robbery. He claimed that the three of them went to DeMartino's home to finalize a business deal with DeMartino for the sale of some jewelry. Banta testified that he had given DeMartino a number of gold chains a couple of days before so that DeMartino could appraise their value before agreeing to purchase them, but DeMartino had put him off until agreeing to meet Banta at DeMartino's home on the evening of March 8. According to Banta, at that meeting DeMartino said he thought the chains were stolen and offered only a fraction of the value he had originally estimated the chains were worth. Banta testified that he became upset and demanded his property back or adequate payment. When DeMartino said he did not have Banta's jewelry with him, Banta testified, he insisted that DeMartino get the property and that he would not leave until DeMartino did so. According to Banta, DeMartino angrily said he could do nothing until morning, but that he would give Banta his personal items as collateral until then and handed them to Banta along with the neck chains he was wearing. Then, Banta testified, he observed DeMartino reach into his bag. Banta grabbed DeMartino's hand and found

DeMartino had reached for a handgun. Banta took the gun away and, according to his testimony, struck DeMartino in the face with the gun several times. DeMartino pleaded and explained that he needed $22,000 or he was going to jail. He then offered Banta all of the property he had with him as collateral because he did not want any more trouble. Banta testified that he said that he did not want any trouble either, and that all he wanted was what was rightfully his. According to his testimony, Banta then accepted DeMartino's property as collateral, and made arrangements to call DeMartino the next day to get the money or his jewelry back.

## I

The defendants claim that the trial court erred in denying their motions for severance which requested separate trials on the two offenses with which each was charged. The defendants assert that they were substantially prejudiced in their trial on the robbery charges by the court's refusal to sever, because proof of a prior felony conviction was an essential element of the second count of the information charging criminal possession of a pistol in violation of General Statutes § 53a-217,[1] and such evidence would have been inadmissible and highly prejudicial; see, e.g., *State* v. *Artieri*, 206 Conn. 81, 88, 536 A.2d 567 (1988); in the case against the defendants with regard to the robbery charges. We disagree.

[1] "[General Statutes] Sec. 53a-217. CRIMINAL USE OF PISTOL, REVOLVER OR ELECTRONIC DEFENSE WEAPON: CLASS D FELONY. (a) A person is guilty of criminal possession of a pistol, revolver or electronic defense weapon when he possesses a pistol, revolver or electronic defense weapon and has been convicted of a capital felony, a class A felony, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196a, a class C felony, except a conviction under 53a-87, 53a-152, 53a-153 or 53a-196b, or a felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

"A judicial authority may order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together. Practice Book § 829; General Statutes § 54-57. A judicial authority may also order separate trials if it appears that a defendant is prejudiced by joinder. Practice Book § 828. This does not mean that severance is to be had for the asking. *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); see also *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982).

"The question of severance lies within the discretion of the trial court. We will not disturb the trial court's conclusion on the issue absent a clear abuse of discretion. The discretion to sever a trial should be exercised only if a joint trial will substantially prejudice the defendant. Substantial prejudice is more than disadvantage and the formidable task of demonstrating an abuse of discretion and that a joint trial resulted in substantial prejudice falls to the defendant. *State* v. *Smith,* 201 Conn. 659, 669, 519 A.2d 26 (1986); *State* v. *Schroff,* 198 Conn. 405, 408, 503 A.2d 167 (1986); *State* v. *Rodgers,* 198 Conn. 53, 63, 502 A.2d 360 (1985); *State* v. *Wiggins,* 7 Conn. App. 95, 101, 507 A.2d 518 (1986). Simply put, the test to be applied is whether substantial injustice will result if the charges are tried together. *State* v. *King,* supra, 299; *State* v. *Oliver,* 161 Conn. 348, 360–61, 288 A.2d 81 (1971)." *State* v. *Edwards,* 10 Conn. App. 503, 506–507, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987).

Our Supreme Court has recently noted that "[s]ubstantial prejudice does not necessarily result from a denial of severance even where evidence of one offense would not have been admissible at a separate trial involving the second offense. A trial court will not have manifestly abused its discretion in denying severance if the state's orderly presentation of evidence has prevented confusion of the jury and has enabled the

jury to consider the evidence relevant to each charge separately and distinctly. See *Drew* v. *United States,* 331 F.2d 85, 89 (D.C. Cir. 1964); *State* v. *Bell,* [supra] 411; *State* v. *King,* supra, 301." *State* v. *Pollitt,* 205 Conn. 61, 68, 530 A.2d 155 (1987).

Although the defendants have briefed this claim together, they are not similarly situated with respect to our examination of these pertinent factors. We therefore discuss the claim of prejudice raised by each separately.

## A

Banta testified at trial. On direct and cross-examination, he stated that he had acquired the jewelry he claimed to have brought to DeMartino during the four years that he was a prison inmate. Banta acknowledged in his direct testimony that had been convicted of larceny in the second degree in 1975, burglary in the third degree in 1978, three counts of burglary in the third degree in 1981, and another felony in 1981. In addition, on cross-examination for impeachment purposes, Banta was asked about a prior incident in which he gave false information to the police regarding an automobile accident. Finally, to corroborate Banta's version of the facts, two individuals who were then serving felony sentences at the state prison in Somers testified that Banta was actively engaged in the business of buying and selling jewelry, mostly gold chains, while in prison. In light of the numerous references to Banta's prior felony convictions and incarceration, including the specific nature of those felony offenses which went well beyond the state's evidence of one unspecified prior felony conviction admitted for consideration with respect to the firearms charge, we cannot conclude that any substantial injustice resulted to Banta from the trial court's refusal to order separate trials on the two offenses. Cf. *State* v. *Foshay,* 12

Conn. App. 1, 28–29, 530 A.2d 611, cert. granted in part, 205 Conn. 813, 532 A.2d 587 (1987).

## B

Habich did not testify at trial and, consequently, his claim of prejudice from the joint trial of these offenses presents a closer question. The prior felony conviction evidence against Habich was mentioned at two points during the trial. First, at the close of the state's evidence, the assistant state's attorney stated before the jury that "the defendants would stipulate with the state, as to the second count of the information charging criminal possession of a firearm, that each of the defendants has been previously convicted of an applicable or appropriate felony under the statute. This is agreed to by the defendants and stipulated to by the state and is part of the element of that crime." Later, during the court's charge to the jury, the matter of the stipulation and the prior felony evidence was again mentioned to the jury: "In this case, however, the three attorneys have agreed that Mr. Banta and Mr. Habich have been convicted of an applicable felony for purposes of the second count of each information which alleges just that as an element of the crime. There are two elements of that second count, one is possession of a pistol, and one is having been previously convicted of an applicable felony. The criminal statute does not use the term 'applicable felony'; it enumerates some section numbers. For purposes of shortcutting testimony which could be avoided and to simplify the matter, the information simply charged 'applicable felony,' so you don't have to deal with specific statute numbers and names of felonies. It is an element of the crime, however, and it has been agreed to. Now, the stipulation that Mr. Banta and Mr. Habich have been convicted of a prior felony, termed 'applicable felony,' *can only be used and considered by the jury for one purpose, and that is as to whether the state has satisfied its burden of proving*

*an essential element of the crime, criminal possession of a pistol. The stipulation that Mr. Banta and Mr. Habich have been previously convicted of such a felony cannot be considered by the jury for any other purpose. For example, the stipulation cannot be considered by you in determining whether the state has satisfied its burden of proof on the other essential elements of possession or with regard to the first count robbery; it has no bearing whatsoever on any other purpose other than the second element of the second count. It cannot be used by the jury as a basis for inferring that having been convicted of an applicable felony, the defendant must be guilty of other crimes or responsible for other elements in either of the two counts. You should not be prejudiced against the defendants in your deliberations because of this stipulation."* (Emphasis added.)[2]

Federal courts which have considered the issue of whether a trial court should have ordered separate trials when the analogous federal crime of being a felon in possession of a firearm; see 18 U.S.C. app. § 1202; 18 U.S.C. § 922 (g); is joined with some other substantive offense, have looked to the following factors in evaluating whether a refusal to order separate trials was an abuse of discretion requiring a reversal of conviction: the manner in which the evidence entered the case and the extent of the jury's knowledge of the facts underlying the prior felony conviction; see, e.g., *United States* v. *Burgess,* 791 F.2d 676, 679 (9th Cir. 1986); *United States* v. *Aleman,* 609 F.2d 298, 310 (7th Cir. 1979), cert. denied, 445 U.S. 946, 100 S. Ct. 1345, 63 L. Ed. 2d 780 (1980); *United States* v. *Busic,* 587 F.2d

---

[2] The court also properly instructed the jury regarding the use of prior felony conviction evidence as affecting the credibility of a witness. The court's discussion of this evidence was specifically limited to Banta and the three other witnesses who were ex-felons. In addition, at several points in its charge to the jury, the court made clear that the jury was to consider the evidence against each defendant and the evidence on each count against each defendant separately.

577, 585 (3d Cir. 1978), rev'd on other grounds, 446 U.S. 398, 100 S. Ct. 1747, 64 L. Ed. 2d 381 (1980); the adequacy of any cautionary instructions given by the court; see, e.g., *United States* v. *Lewis,* 787 F.2d 1318, 1323, amended in other part, 798 F.2d 1250 (9th Cir. 1986); *United States* v. *Silva,* 745 F.2d 840, 844 (4th Cir. 1984), cert. denied, 470 U.S. 1031, 105 S. Ct. 1404, 84 L. Ed. 2d 791 (1985); the use of the prior felony evidence by the prosecution in argument to the jury; see, e.g., *United States* v. *Lewis,* supra; *United States* v. *Valentine,* 706 F.2d 282, 290 (10th Cir. 1983); the likelihood that the prior felony conviction evidence will inflame the passions of the jurors in light of the nature of the offenses charged; see, e.g., *United States* v. *Lewis,* supra; and the strength of the evidence against the defendant. See, e.g., *United States* v. *Burgess,* supra; *United States* v. *Lewis,* supra, 1322. We find these factors to be helpful in evaluating Habich's claim of undue prejudice resulting from the trial court's refusal to order separate trials on the robbery and criminal possession of a pistol charges.[3]

The record in this case leads us to conclude that any prejudicial effect to Habich caused by the joinder of the two counts was minimal. Habich's prior conviction was presented to the jury by a stipulation which simply stated that he had previously been convicted of an "applicable felony," without disclosing the nature of the crime or the length of the sentence. The court's cautionary instruction was complete and emphatic. See *State* v. *Edwards,* supra, 508–509. The state did not use Habich's prior conviction for dramatic or inflam-

---

[3] Another factor which, of course, must be considered in the appropriate case is the effect of the joinder upon a defendant's right to testify or not to testify. See, e.g., *State* v. *Edwards,* 10 Conn. App. 503, 506–10, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987). We need not consider this factor in the present case, however, because the defendants do not assert that these constitutional rights were impaired in any way by the trial court's refusal to sever the trial of the firearms charges from the trial of the robbery charges.

matory effect; see *United States* v. *Lewis,* supra, 1322–23; and the case was such that the jury is unlikely to have been swayed by passions. See *State* v. *Boscarino,* 204 Conn. 714, 529 A.2d 1260 (1987). Furthermore, the jurors acquitted Habich on the possession count. See *State* v. *Lo Sacco,* 11 Conn. App. 24, 27, 525 A.2d 977, cert. denied, 204 Conn. 812, 528 A.2d 1158 (1987). This provides further support for the conclusion that "the state's orderly presentation of evidence . . . prevented confusion of the jury and . . . enabled the jury to consider the evidence relevant to each charge separately and distinctly." *State* v. *Pollitt,* supra, 68. Finally, the evidence against Habich was neither sparse nor unconvincing. We conclude that the trial court here gave adequate consideration to the potential for prejudice caused by the joinder of the felony conviction charge with the robbery charge, and that Habich "has failed to sustain his heavy burden of showing that the denial of his motion to sever resulted in substantial injustice or prejudice." *State* v. *Edwards,* supra, 509.

## II

The defendants next argue that the trial court erred in not requiring a two part information and trial on the charge of criminal possession of a pistol. They contend that the denial of their motions for a bifurcated trial, which allowed their prior convictions to go before the jury, was error. The defendants base this claim on *State* v. *Ferrone,* 96 Conn. 160, 171–76, 113 A. 452 (1921), and Practice Book §§ 619 and 840,[4] which, they contend, "require a bifurcated information and trial when

---

[4] "[Practice Book] Sec. 619. FORMER CONVICTION. Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the court wherein such conviction was obtained

the defendant's prior conviction is part of the alleged crime." While we agree that these rules of practice require a two part information and trial when proof of a defendant's prior conviction is used to enhance the punishment for a contemporaneous conviction of a substantive offense, we disagree that these rules on *Ferrone* apply to a charge brought under General Statutes § 53a-217.

As Practice Book § 619 clearly states, a two part information is required "[w]here the information alleges, in addition to the principal offense charged, a former conviction or convictions . . . ." In a prosecution under General Statutes § 53a-217, the former conviction is not alleged in addition to the principal offense, but is an essential factual element of the offense. The part of Practice Book § 619 which requires that "[i]n the first part [of the information], the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged," cannot logically be made to fit the situation of § 53a-217, as the defendants urge, because, in setting out the principal offense, the first part of the information would, of necessity, include mention of the defendant's prior felony conviction which forms a part of that charge. No useful purpose would be served by a separate information alleging only the prior conviction. Additionally, an information alleging only that a defendant possessed a handgun, without mention of his prior conviction, would fail to allege any cognizable offense under our penal code.

and the crime of which the defendant was convicted, all of which may be stated in accordance with the provisions of Sec. 618."

"[Practice Book] Sec. 840. TWO PART INFORMATION OR INDICTMENT. When an information or indictment is divided into two parts under Sec. 619, on a finding of guilty on the first part of the information or indictment, a plea shall be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information or indictment, such trial may be had to the same or to another jury as the judicial authority may direct."

The rule of *State* v. *Ferrone,* supra, which is now incorporated into our rules of practice in some detail; see Practice Book §§ 619, 647, 648; applies only to persistent offender or recidivist charges. See General Statutes § 53a-40. It applies to allegations of prior convictions which cannot be brought separately from an information charging a specific substantive crime; *State* v. *Lewis,* 176 Conn. 270, 272–73, 407 A.2d 955 (1978); and for which conviction may be obtained simply upon proof of the defendant's status as a person who has been convicted before of the applicable offense or offenses. In such instances, the defendant's prior convictions are not only an element of the crime charged; they are the *only* facts which need be proven beyond a reasonable doubt to warrant conviction. It is because of these aspects of a recidivist charge, not present in a charge of criminal possession of a pistol in violation of General Statutes § 53a-217, that the use of the second part of the information to set forth this secondary offense as required by the rules of practice is workable and serves to ensure that a jury is not prejudiced by evidence of a defendant's prior convictions. That a bifurcated trial on an information charging possession of a pistol by a convicted felon is possible; see, e.g., *United States* v. *Franke,* 331 F. Sup. 136 (D. Minn. 1971); is not determinative of the defendant's claim. Our rules of practice simply do not, and cannot by their own terms be made to, require a two part information for charges under § 53a-217 without doing violence to the language of those rules.

### III

The defendants also claim that the trial court erred in not suppressing evidence obtained during a search of the motel room and the automobile which was conducted pursuant to a warrant. They contend that the search violated their rights under the federal and state

constitutions because the affidavit underlying the search warrant failed to establish probable cause.[5] We disagree.

The affidavit signed by two New Haven police officers, Joseph Reynolds, Jr., and Thomas Lokites, set forth the following facts. Reynolds and Lokites are law enforcement officers with a total of nineteen years experience with the New Haven police department, including assignment to the investigative service unit. On March 8, 1985, at 10:24 p.m., Joseph DeMartino reported that a robbery had occurred in the driveway of his home at 345 Lighthouse Road; DeMartino was approached by three men, two tall and one short, wearing black masks, one of whom was armed with a handgun, who took his wallet and other described property and then pistol-whipped him before fleeing on foot.

Paragraph six of the affidavit recited that "a witness who was interviewed did state that [she] had observed a yellow auto containing three white males park on Morris Avenue, they did exit the auto and walked on Morris Avenue and then walked into the rear of 325 Lighthouse Road, the witness at this time did obtain the marker number of this auto due to the fact that no one parks in this area. The marker number is New Jersey 335 YFW, shortly thereafter she heard the doors close and observed the auto traveling south on Morris Avenue with its lights out, at this time three subjects were observed in the auto." The affidavit also stated that a motor vehicle check showed that the vehicle was owned by Habich, who had committed a prior robbery

---

[5] Since a challenge to the sufficiency of a probable cause determination under the Connecticut constitution is governed by the stricter *Aguilar-Spinelli* test, rather than the *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983), standard of the federal constitution; *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985); we consider the defendants' claim only under our state's more protective constitutional standard.

in New Haven in 1969 and whose mother informed the police that he had left New Jersey on March 2 to visit Banta in Connecticut. Police files disclosed a Charles Banta, a white male, with a Milford address. There was no car of the above description at that address. The affidavit further stated that the automobile was located in the parking lot of a West Haven motel at 3 a.m. on March 9, that the description of the individual who registered in room 122 given by the motel clerk fit that of Banta, that that individual had let two other white males into his room, and that the motel clerk stated that two of the men were tall and the other short.

Under our state constitution, the affidavit supporting the search warrant can pass muster if it meets the test set forth in *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), which is based on an analysis of two key factors: " '(1) the basis of the informant's knowledge—the means by which he acquired his information, and (2) the underlying facts establishing either his general veracity or his reliability in the particular case.' " *State* v. *Garcia,* 7 Conn. App. 354, 358, 508 A.2d 824 (1986), quoting *State* v. *Martin,* 2 Conn. App. 605, 610, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985).

The defendants' challenge to the search warrant affidavit focuses exclusively on paragraph six of the affidavit, which supplies the crucial link between the robbery and the defendants. The defendants claim that under the *Kimbro* "basis of knowledge" prong, the affidavit fails to state a time or date of the informant's observations, fails to identify the relationship of the informant to the scene of the crime, and fails to indicate how the informant happened to be in a position to observe what is related in the affidavit. The defendants also claim that, under the "credibility" prong of *Kimbro,* there was insufficient corroboration of the

informant's reliability. We find both contentions to be without merit.

In evaluating the search warrant affidavit under the *Kimbro* test, certain principles generally applicable to the evaluation of search warrant affidavits must also be recognized. The affidavit must be read in a common sense and realistic manner, and the issuing magistrate is not confined to its literal terms but may draw reasonable inferences therefrom. *State* v. *Ralston,* 7 Conn. App. 660, 673, 510 A.2d 1346 (1986). Probable cause is a mosaic "established by fitting pieces of information together"; id., 682; which convinces the magistrate of a fair probability that the evidence of the crime is where it is alleged to be.

The facts set forth in the affidavit show that the witness acquired her information from firsthand observation made in an area adjacent to the crime scene and are sufficient to support the reasonable inference that these observations, made to the police during the course of their investigation at the scene of the crime, were made close in time to the occurrence of the crime. Furthermore, as to the reliability of the information supplied to the police, it is significant that the affiants termed the person who had given them information as a "witness" and not an "informant." A witness is a person who "has personal knowledge of something." Webster, Third New International Dictionary. The facts related in the affidavit support the reasonable inference that the witness referred to in paragraph six was "a 'citizen-informer' who is more deserving of belief than the typical informant from a criminal milieu. 1 LaFave, Search and Seizure § 3.3, p. 499; *United States* v. *Harris,* [403 U.S. 573, 599, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971)] (Harlan, J. dissenting). *United States* v. *Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S. Ct. 1122, 47 L. Ed. 2d 324 (1976). 'It is generally agreed . . . that a compara-

ble showing is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim or a witness.' 1 LaFave, Search and Seizure § 3.4, p. 587; see *Jaben* v. *United States,* 381 U.S. 214, 85 S. Ct. 1365, 14 L. Ed. 2d 345 (1965)." *State* v. *Daley,* 189 Conn. 717, 723–24, 458 A.2d 1147 (1983). Accordingly, we conclude that the search warrant was properly supported by a showing of probable cause and therefore was validly issued.

## IV

We next consider the defendants' claim that the court's instructions to the jury regarding inferences drawn from circumstantial evidence diluted the constitutional requirement that the state prove guilt beyond a reasonable doubt. The court's instructions included the all too familiar language that "[s]uch an inference may be made if the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt, and the inference requested to be drawn is not only logical and reasonable, but is strong enough so that you can find that *it is more probable than not* that the fact to be inferred is true." (Emphasis added.) The defendants argue that this charge constituted reversible error because, they claim, intent was an important and disputed issue in the case and that this issue was, of necessity, resolved by inferences drawn from circumstantial evidence.[6]

---

[6] As briefed by the defendants, this claim goes only to the conviction for robbery in the first degree. Although Banta was also convicted of criminal possession of a pistol, his argument on this issue does not appear to focus upon that aspect of this case. In fact, the evidence on that charge included the direct testimony of Banta himself wherein he admitted that he was in possession of the pistol as charged. Accordingly, in considering this claim of error, we confine our review to an examination of the effect, if any, which the challenged instructions may have had on the jury's consideration of the evidence against both defendants on the robbery offense.

We first note that, despite the defendants' failure to except to the court's jury charge, their claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). *State* v. *McDonough,* 205 Conn. 352, 354, 533 A.2d 857 (1987), cert. denied,    U.S.    , 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). Moreover, it is well established that such an instruction is erroneous. Id., 355–56; *State* v. *Hufford,* 205 Conn. 386, 407, 533 A.2d 866 (1987). The only question, then, is whether the error is reversible in this case. We conclude that it is not.

"In considering the harmfulness of an erroneous instruction on circumstantial evidence, we have distinguished between cases where circumstantial evidence is the primary proof of an element of the crime and those where direct testimony plays the major role." *State* v. *McDonough,* supra, 358. Our review of the record reveals that intent was not the key issue at trial; instead, whether the crime occurred, an issue "ordinarily proved by direct testimony with circumstantial evidence playing a subordinate role"; id.; was the central matter for the jury to decide. Whether what occurred in DeMartino's driveway on March 8 was a robbery as the state claimed or whether it was a business deal gone wrong as the defense contended, which the defendants properly characterize as "the dispute at trial," was largely dependent upon which version of the facts, the victim's or Banta's, was given credence by the jury. "Contrary to the defendant[s'] assertion, the principal disputed issue in this case was not intent, but the credibility of the complainant. [Banta] denied that he committed the crimes charged. The evidence produced to prove that the crime was committed was the direct testimony of the complainant. This evidence was contradicted by the direct testimony of the defendant . . . . On this record, it is clear that the jury's verdict depended not upon circumstantial evidence, but upon the credit it gave to the direct testimony of the

complainant." *State* v. *Hufford,* supra, 408; see also *State* v. *Gonzalez,* 206 Conn. 213, 227–28, 537 A.2d 460 (1988).[7]

We therefore review the erroneous instruction in the context of the charge as a whole to ascertain whether it is reasonably possible that the jury was misled by an erroneous explanation of the use of circumstantial evidence. *State* v. *Hufford,* supra, 407–409. Having reviewed the court's charge as a whole, and finding present each of the "curative factors" mentioned in *State* v. *Hufford,* supra, 408, we conclude that it is not reasonably possible that the erroneous instruction misled the jury as to the state's burden of proof on the robbery charge.

## V

Finally, Banta[8] challenges the constitutionality of General Statutes § 53a-217; see footnote 1, supra; under various state and federal constitutional provisions. Specifically, Banta claims that his conviction for criminal possession of a pistol violates his right to bear arms under the state constitution, his right to equal protection of the laws under both the state and federal constitutions, the prohibition against ex post facto laws in the federal constitution, and the prohibition against bills of attainder in both the state and federal constitutions.

---

[7] Even if we were to accept the defendants' characterization of the dispute at trial as one which revolved around intent, the framing of that issue by the defendants themselves—"[w]hether there was an intent to rob or [whether instead] an intent to regain property which DeMartino had withheld wrongfully"—belies any suggestion that intent in this case was proved by circumstantial evidence. What the defendants' intent was on March 8, therefore, was largely dependent upon which version of the events of that evening the jury chose to credit, the victim's or Banta's.

[8] In their combined brief, the defendants jointly argue that General Statutes § 53a-217 is unconstitutional. Habich was acquitted of this offense. In light of our approval of the trial court's refusal to sever the robbery and criminal possession of a pistol counts, we find no merit in Habich's claim

Before addressing Banta's constitutional claims, we must determine whether they are reviewable by this court. None of these claims was raised in the trial court. Banta urges review under the second "exceptional circumstance" of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id., 70. We disagree, and we conclude that the defendant's constitutional claims do not qualify for *Evans* review.

We have repeatedly stated that, in deciding whether *Evans* review is warranted, we must answer two preliminary questions in the affirmative. See *State* v. *Huff,* 10 Conn. App. 330, 333–34, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 525 (1987); *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987); *State* v. *Newton,* 8 Conn. App. 528, 531–32, 513 A.2d 1261 (1986). First, is the label placed on the claim by the defendant constitutional in nature? *State* v. *Huff,* supra, 334. Second, does a limited review of the record disclose that the defendant's claim is truly of constitutional proportion, and is not simply a nonconstitutional claim characterized by the defendant as constitutional? Id.

In this case, the defendant has satisfied the first requirement, because he claims that the statute under which he was convicted was unconstitutional in various respects. He has not satisfied the second requirement, however, because our limited review of the record discloses that his claims are not of true constitutional proportion, but are simply characterized as such by him.

that his trial on the allegedly unconstitutional criminal possession offense prejudiced him with respect to his trial on the robbery offense. No authority is cited for this proposition. We therefore consider this claim only as it bears on Banta's judgment of conviction for criminal possession of a pistol in violation of General Statutes § 53a-217.

We first note that, with but two exceptions, our Supreme Court has consistently refused to afford *Evans* review to challenges to the constitutionality of statutes, as opposed to challenges to actions of the trial court leading to a conviction. See *McLaughlin* v. *Bronson,* 206 Conn. 267, 276, 537 A.2d 1004 (1988) ("The record furnished by the petitioner fails even to disclose a challenge in the trial court to § 18-26 on the grounds of vagueness or overbreadth. This claim of error is not in any way cognizable under *State* v. *Evans.*"); *State* v. *Thompson,* 197 Conn. 67, 76 n.7, 495 A.2d 1023 (1985) (claim that the mandatory minimum sentence provision of General Statutes § 19-480(a), now General Statutes § 21a-278 (a), is unconstitutionally vague); *State* v. *Cuvelier,* 175 Conn. 100, 111, 394 A.2d 185 (1978) (challenge to constitutionality of General Statutes § 53a-47).

The two exceptions we have found to this line of authority are *State* v. *Williams,* 205 Conn. 456, 469–74, 534 A.2d 230 (1987), and *State* v. *Schriver,* 207 Conn. 456, 458–59, 542 A.2d 686 (1988). In *Williams,* the court reviewed and rejected the defendant's *Evans* claims that General Statutes § 53a-167a is unconstitutionally vague and overbroad. There, the court granted review simply because the defendant's claims "facially implicate[d]" certain federal and state constitutional rights. Id., 460. In *Schriver,* the court similarly concluded that "a claim of unconstitutional vagueness . . . warrants appellate scrutiny [under *Evans*], because it implicates the fundamental due process right to fair warning and the record is adequate to facilitate review." Id., 459. In neither *Williams* nor *Schriver* did the court advert to or distinguish *State* v. *Thompson,* supra, or *State* v. *Cuvelier,* supra. Faced with these apparently inconsistent applications of the *Evans* "rule of principled appellate discretion"; *State* v. *Cosby,* 6 Conn. App. 164, 172, 504 A.2d 1071 (1986); we con-

clude that *Schriver* and *Williams* do not afford *Evans* review of the defendant's claims, and that the *McLaughlin-Thompson-Cuvelier* line of authority controls.

Both *Schriver* and *Williams* involved constitutional challenges to the vagueness of statutes, and the court emphasized the defendant's fundamental right to fair warning. See also *State* v. *McKenna,* 11 Conn. App. 122, 125, 525 A.2d 1374, cert. denied, 205 Conn. 806, 531 A.2d 939 (1987) (*Evans* review granted to vagueness challenge). In *Schriver,* the court distinguished *McLaughlin* on the bases that the appellant had not filed transcripts of the trial court proceedings, and that the court had already determined the vagueness claim to be meritless. *State* v. *Schriver,* supra.

The fact that neither the Supreme Court in *Schriver* and *Williams,* nor this court in *McKenna,* adverted to *Thompson* or *Cuvelier,* and the Supreme Court's view of *McLaughlin* as discussed in *Schriver,* suggest that a vagueness challenge supported by an adequate appellate record is an exception to the *McLaughlin-Thompson-Cuvelier* general nonreviewability line of authority. In this case, however, the defendant mounts no vagueness challenge.

Furthermore, review under *Evans* is supposed to be a "narrow [exception]" to the general rule of non-reviewability of "issues, constitutional or otherwise, that have not been preserved for appeal in the trial court." *McLaughlin* v. *Bronson,* supra, 276. The "ancient and sound" policies; *State* v. *Hinckley,* 198 Conn. 77, 81, 502 A.2d 388 (1985); requiring that claims be made at trial in order to be reviewed on appeal, should not be abandoned, and the trial should not be reduced to "a Kafkaesque academic test which [the trial judge] would be determined on appeal to have failed because of questions never asked of him and issues

never clearly presented to him." *State* v. *Cosby,* supra, 174. We do not believe that *Evans* review has been stretched to allow review under the circumstances of this case.

Finally, our limited review of the record in this case convinces us that the defendant's claims are not truly of constitutional dimension. He claims that the state constitutional provision regarding the right to bear arms; Conn. Const., art. I, § 15; confers on him an individual constitutional right to possess a pistol. Even if we assume without deciding that there is such an individual constitutional right, similar constitutional provisions in other states have been repeatedly interpreted to be subject to reasonable limitation. See, e.g., *People* v. *Blue,* 190 Colo. 95, 102–103, 544 P.2d 385 (1975); *State* v. *Cartwright,* 246 Or. 120, 134–36, 418 P.2d 822 (1966); *Carfield* v. *State,* 649 P.2d 865, 871–72 (Wyo. 1982). The defendant has not established that this prohibition applicable to convicted felons is unreasonable. His related claim that General Statutes § 53a-217 violated his constitutional right to possess a pistol for purposes for self-defense simply finds no factual support in this record. The defendant's claim that General Statutes § 53a-217, as applied to him, violates federal and state equal protection clauses is also unsupported by the record. His claim that the statute is an ex post facto law founders because, although the defendant's prior conviction preceded the enactment of General Statutes § 53a-217, the criminalized conduct, namely, his possession of the pistol, did not. See *State* v. *Rollinson,* 203 Conn. 641, 646, 526 A.2d 1283 (1987); *Landers* v. *State,* 250 Ga. 501, 299 S.E.2d 707 (1983); *Cases* v. *United States,* 131 F.2d 916 (1st Cir. 1942), cert. denied, 319 U.S. 770, 63 S. Ct. 1431, 87 L. Ed. 1718 (1943); 1 W. LaFave & A. Scott, Substantive Criminal Law (1986), p. 139. Similarly, the defendant's claims that

§ 53a-217 constitutes a bill of attainder under the federal and state constitutions are unsupported by the record. See *De Veau* v. *Braisted,* 363 U.S. 144, 80 S. Ct. 1146, 4 L. Ed. 2d 1109 (1960); L. Tribe, American Constitutional Law (2d Ed.) p. 643. In sum, the record discloses that the defendant has simply attempted to create constitutional claims which are unsupported by the record in this case. We therefore decline to review the claims further.

There is no error.

In this opinion the other judges concurred.