## State of Connecticut *v.* Balfour Dunn
### (9325)
### (9326)

Dupont, C. J., Spallone and Lavery, Js.

Argued September 11—decision released October 10, 1991

*Susan M. Hankins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, was *John C. Bailey,* state's attorney, for the appellee (state).

SPALLONE, J. In this combined appeal, the defendant challenges various instructions given to the jury by the trial court, raises a double jeopardy claim and contends that the evidence was insufficient to sustain his conviction for attempt to commit assault in the first degree.

The defendant's first claim requires that we once again address the issue of whether the trial court's erroneous instruction to the jury regarding inferences drawn from circumstantial evidence impermissibly diluted the constitutional requirement that the state prove guilt beyond a reasonable doubt and instead permitted the jury to find the defendant guilty by a preponderance of the evidence. Because we reverse the judgments of conviction due to the trial court's erroneous instruction on circumstantial evidence and order a new trial on all charges of which the defendant was convicted, we discuss only the defendant's claim regarding that jury instruction, and his claim concerning the insufficiency of the evidence.

The defendant was charged in two separate informations with similar offenses occurring on different dates, involving different witnesses and complainants. He appeals from the judgment of conviction on one information of robbery in the third degree in violation of General Statutes § 53a-136, larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and from the judgment of conviction on the other information of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (4), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2).

The jury could have reasonably found the following facts with respect to the offenses charged in the first information. On September 10, 1984, James Brown was walking toward a pay telephone at the Unity Plaza shopping center on Barbour Street in Hartford when the defendant walked up to him, grabbed him by the shirt and said, "Let me see what you got in your pockets." The defendant felt inside Brown's pockets and took $20 out of one of them. The defendant then punched Brown once in the jaw. As a crowd gathered, the defendant told the crowd to stand back and made a gesture with his hand that gave Brown the impression that the defendant had a gun. The defendant then left the scene.

Brown testified that he was acquainted with the defendant prior to this incident and had had a disagreement with him about two months earlier concerning a stereo cassette player that the defendant had accused Brown of taking. Brown admitted having seen the cassette player on one occasion, but denied having taken it.

The jury could have reasonably found the following facts with respect to the offenses charged in the second information. On October 13, 1984, Frank Bell was in front of his apartment building on South Marshall Street in Hartford with a friend when he saw the defendant. Bell knew the defendant. The defendant made the comment, "I got it good," which Bell interpreted to refer to drugs. The defendant followed Bell and his friend into the apartment building. The defendant then struck Bell several times on the back of the head with a gun. Bell fell to the ground, and his friend began screaming. The defendant then shot the gun toward the wall and told her to "shut the hell up." When Bell "got sick of getting hit in the head," he got up and pushed the defendant against a wall, causing him to drop the gun. The defendant then said, "Frank, don't fight me. Just give me what you got." The defendant retrieved the gun and put it to Bell's nose, saying "Give it up." The defendant tried to reach into Bell's back pocket, but Bell pushed him away. The defendant then looked around and, noticing that Bell's friend was gone, left the building.

At trial, the defendant testified. With respect to the September 10 incident involving Brown, the defendant stated that he had known Brown for some time prior to that date. The defendant accused Brown of having stolen a cassette player from him and said that Brown had agreed to reimburse him but had failed to do so. On September 10, according to the defendant's testimony, he saw Brown at the Unity Plaza shopping center and asked him for payment. According to the defendant, Brown gave him $20, but the defendant told Brown that was not sufficient. A fight ensued between Brown and the defendant. The defendant then left the area.

With respect to the October 13 incident involving Bell, the defendant testified that he had known Bell

for some time prior to that date. Two years earlier, the defendant explained, he had sold Bell some stereo equipment for which Bell had not yet paid in full. On October 13, according to his testimony, the defendant saw Bell outside the apartment building and asked if Bell was going to "take care of" him. Bell said "Yes," and said that he would go to his apartment upstairs for a minute. The fight ensued, the defendant testified, when he felt that Bell was stalling about paying him. The defendant explained that he and Bell "just started tussling." The defendant admitted that he pulled out the gun and hit Bell five or six times on the head with it. The defendant testified that the gun discharged accidently when he picked it up later in the fight.

In its general charge on circumstantial evidence, the trial court instructed the jury that "proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts." The court's instructions then included the all too familiar language that "[s]uch an inference may be made provided two elements in the application of the rule are satisfied. One, that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt, and, two, that the inference that you are asked to draw, not only is logical and reasonable, but is strong enough that you can find that *it is more probable than not* that the fact to be inferred is true." (Emphasis added.) The defendant argues that this instruction constituted reversible error because, he claims, intent was an important and disputed issue in both cases and that this disputed issue was, of necessity, resolved by inferences drawn from circumstantial evidence.

Because the defendant failed to file a request to charge on circumstantial evidence and failed to except to the court's jury charge, we must first determine whether this claim is reviewable. The instruction was given in 1985, prior to our Supreme Court's rulings in *State* v. *Reddick,* 197 Conn. 115, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986), and *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985). It is now clear both that the instruction is regarded as incorrect and that the defendant's unpreserved claim is reviewable. *State* v. *Holding,* 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *James,* 211 Conn. 555, 580–81, 560 A.2d 426 (1989); *State* v. *McDonough,* 205 Conn. 352, 354–56, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988).

"While we have consistently held such a charge to be erroneous, such error is not reversible unless it can be shown that it was reasonably possible that the jury was 'misled [by the charge] to believe that they were to apply any standard other than that of "beyond a reasonable doubt" in determining the guilt of the accused.' *State* v. *Miller,* [202 Conn. 463, 491–92, 522 A.2d 249 (1987)]; *State* v. *Robinson,* [204 Conn. 207, 210–11, 527 A.2d 694 (1987)]; *State* v. *Whelan,* [200 Conn. 743, 756–57, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986)]." *State* v. *Hufford,* 205 Conn. 386, 407, 533 A.2d 866 (1987). "In considering the harmfulness of an erroneous instruction on circumstantial evidence, we have distinguished between cases where circumstantial evidence is the primary proof of an element of the crime and those where direct evidence plays the major role." *State* v. *McDonough,* supra, 358; *State* v. *Banta,* 15 Conn. App. 161, 179, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1083 (1988). The reason for this distinction is that it is in only those cases where the verdict is dependent on jury

consideration of circumstantial evidence that it is reasonably possible that the jury was misled by the erroneous instruction. *State* v. *McDonough,* supra, 360–61.

"If the principal disputed issue is intent, which is typically proven by circumstantial evidence, ' "we will closely scrutinize the court's instructions" on circumstantial evidence, in isolation from the remainder of the charge, to determine whether the court misled the jury as to the state's burden of proof.' " *State* v. *Hufford,* supra, 407–408, quoting *State* v. *Robinson,* supra, 210. The defendant contends that "the crux of [his] trial strategy was to show through both cross-examination of the state's witnesses and testimony of defense witnesses that the defendant had no intent to rob or assault Brown and Bell." The state, on the other hand, argues that this case is controlled by our Supreme Court's factual analysis in *State* v. *Hufford,* supra, and *State* v. *Gonzalez,* 206 Conn. 213, 537 A.2d 460 (1988), and that we must therefore review the erroneous instruction in the context of the charge as a whole.

In *State* v. *Hufford,* supra, the victim and the defendant gave different versions of the events that took place in the back of an ambulance on its way to the hospital. Although the trial court gave an erroneous instruction on circumstantial evidence, the *Hufford* court concluded that "the principal disputed issue in this case was not intent, but the credibility of the complainant. The defendant denied that he committed the crimes charged. The evidence produced to prove that the crime was committed was the direct testimony of the complainant. This evidence was contradicted by the direct testimony of the defendant and his version of the facts was corroborated by the testimony of . . . the ambulance driver. On this record, it is clear that the jury's verdict depended not upon circumstantial evidence, but upon the credit it gave to the direct testi-

mony of the complainant." Id., 408. In *State* v. *Gonzalez,* supra, 227–28, because the ultimate factual issue was the credibility of the conflicting testimony of the witnesses and because the jury's consideration of the credibility to be accorded the other eyewitnesses as opposed to the defendant was not dependent on circumstantial evidence, our Supreme Court reviewed the challenged instruction of circumstantial evidence in the context of the charge as a whole. Likewise, in our own case of *State* v. *Banta,* supra, where the jury had to decide whether what occurred was a robbery as the state claimed or a business deal gone wrong as the defense contended, we concluded that "intent was not the key issue at trial; instead, whether the crime occurred, an issue 'ordinarily proved by direct testimony with circumstantial evidence playing a subordinate role'; [*State* v. *McDonough,* supra, 358]; was the central matter for the jury to decide." *State* v. *Banta,* supra.

While we agree that this case is very similar to *Hufford, Gonzalez,* and *Banta,* we do not believe that our decision in this case is controlled by the factual analysis in those cases. One critical feature distinguishes this case from those cases and compels us to conclude that it is reasonably possible that the jury was misled by the court's instruction on the use of circumstantial evidence.

Although circumstantial evidence was not the only way through which the jury could determine intent based on the parties' presentation of their cases, the trial court directed the jury to do so in its instructions. Immediately preceding the erroneous jury charge in question, the court explained to the jurors "the distinction between direct evidence and circumstantial evidence," noting that "this is important because *you are going to have to rely in some cases on circumstantial evidence, and one of the things, when we get into it, is*

*the element of these offenses.* We are going to be discussing elements of intent *and the only way you can really determine what a person intended to do is by taking a look at certain facts, and then from those facts that you find proven determine what his intent was in doing those things."* (Emphasis added.) Later in its jury instructions, the court discussed intent as an element of each offense of which the defendant was accused. When the court discussed the element of intent with respect to the larceny count, the court explained that *"[w]hen we are talking about determining intent, we are getting back to what I said about circumstantial evidence.* You can't open a person's mind and see what he intended to do. But, you can determine what he did, and from that you can infer what he intended to do." (Emphasis added.) When the court discussed the element of intent with respect to the assault counts, the court explained that it was "not going to go back into intent, but, *how you find a person's intent, but I did cover that for you previously, and you will use the same guidelines of determining whether intent existed here."* (Emphasis added.) Finally, when the court discussed the element of intent with respect to the robbery counts, the court explained that "again, you are going to have to look at intent, and the intent is something you have to determine from what occurred from the other evidence."

Because the jury was directed to determine the element of intent with respect to each offense by *explicit* reference to the erroneous instruction on circumstantial evidence, we must conclude that this case is more similar to the cases of *State* v. *Rodgers,* supra, and *State* v. *Whelan,* supra, in which intent was the disputed issue for the jury to decide and where the challenged instruction was therefore subject to close scrutiny, than to the cases relied on by the state. Although the underscored portions of the court's instructions on intent are not

erroneous, because they focused the jury on the element of intent through the lens of the challenged instruction, we conclude that the verdict was necessarily dependent on jury consideration of circumstantial evidence and that it was therefore reasonably possible that the jury was misled with respect to the state's burden of proving intent beyond a reasonable doubt. *State* v. *Whelan,* supra, 758. Accordingly, we hold that, under the unique circumstances of this case, the court's instructions on circumstantial evidence violated the defendant's constitutional right to have the state prove him guilty beyond a reasonable doubt and requires that we order a new trial on all issues.

With the exception of the defendant's claim regarding the alleged insufficiency of the evidence to support his conviction for attempt to commit assault in the first degree, we do not address the remaining claims because they are not likely to arise at the new trial in this matter.[1] We must, however, address the defendant's claim of insufficient evidence since he would be entitled to a judgment of acquittal on that charge if he were to prevail on that claim. See *State* v. *McIntosh,* 12 Conn. App. 179, 187 n.3, 530 A.2d 191, cert. denied, 205 Conn. 808, 532 A.2d 77 (1987). The defendant maintains that the state failed to present sufficient evidence to support his conviction for an attempt to commit assault in the first degree against Bell. Specifically, the defendant maintains that the state failed to prove his

---

[1] We note specifically that we do not address the defendant's double jeopardy claim because it is based on "that strand of double jeopardy jurisprudence that 'protects against multiple punishments for the same offense.' " *State* v. *Delgado,* 19 Conn. App. 245, 250, 562 A.2d 539 (1989), quoting *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). His claim is not one invoking the double jeopardy protection against successive prosecutions. See *State* v. *Lonergan,* 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990).

intent "to cause *serious* physical injury to another person" (emphasis added) as required by General Statutes 53a-59 (a) (1). We disagree.

" 'When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a two-fold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether the " 'jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " . . .' " (Citations omitted.) *State* v. *Carpenter,* 214 Conn. 77, 78–79, 570 A.2d 203 (1990).

The defendant argues that, because he did not shoot Bell with his operable and loaded gun despite his apparent ability to do so and instead chose to use that same gun as a club, he could not have intended to cause *serious* physical injury. The defendant has not provided us with any authority that would countenance such a novel argument. While an injury inflicted from a gun blast might indeed be an indication of an intent to cause a more serious physical injury, we do not agree that a pistol-whipping with an operable gun necessarily negates an intent to cause serious physical injury. Although it would have been permissible to infer that the defendant did not intend to cause serious injury to Bell from the fact that he did not shoot Bell despite the opportunity and means to do so, the evidence did not preclude the equally permissible inference that the defendant intended to cause serious injury to Bell by hitting him in the head with the gun as many as six times, causing him to fall to the ground. See *State* v. *Montanez,* 219 Conn. 16, 21, 592 A.2d 149 (1991). The jury could have reasonably concluded beyond a reason-

able doubt that the defendant attempted to cause serious physical injury to Bell.

The judgments of the trial court are reversed and the cases are remanded for a new trial.

In this opinion the other judges concurred.