[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff's permit to carry a pistol or revolver was revoked by the State of Connecticut, Board of Firearms Permit Examiners ("Board"). The plaintiff is aggrieved by such Board decision and brings this appeal pursuant to the Uniform Administrative Procedure Act (UAPA) General Statutes §§ 4-166
et seq. and 4-183.
The facts underlying this case are not in dispute. The plaintiff in January of 1990 qualified and received, in accordance with § 29-28, a permit to carry a pistol or revolver. The permit was for a period of five years and was renewed by the Board in January of 1995. The plaintiff on May 13, 1994 was convicted of assault in the third degree, a class A misdemeanor, in violation of General Statutes § 53a-61.
Public Act 1994, No. 94-1, effective October 1, 1994, amended § 29-28 to prohibit the issuance of a pistol permit to anyone convicted of certain misdemeanors, including § 53a-61.
Plaintiff was advised on April 13, 1995 that his permit was being revoked because of the incident which resulted in his § 53a-61 conviction. Pursuant to § 29-32b, the plaintiff requested a hearing on such revocation, which was held by the CT Page 12058 Board on March 6, 1997. The Board's decision, dated March 6, 1996 but mailed March 27, 1996, upheld the revocation of the permit.
Section 29-32b(f) authorizes anyone aggrieved by a decision of the Board to appeal to the Superior Court under the provisions of the UAPA. The plaintiff filed his appeal on April 24, 1996 in the Judicial District of Fairfield at Bridgeport. The case was transferred to this court on December 10, 1997. The parties filed written briefs and were heard in oral argument on October 20, 1998.
The plaintiff raised three issues in his appeal and brief: 1) the application of the October 1, 1994 amendment to § 29-32
to revoke a permit for a conviction preceding the October 1, 1994 date is a violation of the constitutional prohibition against ex post facto laws;[1] 2) the retroactive application of Public Act 94-1 violates § 55-3;[2] and 3) that revocation of the plaintiff's permit violates the constitutional right to bear arms.
Subsequent to the filing of the briefs in this case, the Supreme Court resolved the second claim raised by the plaintiff in Taylor v. Kirschner, 243 Conn. 250 (1997). The Taylor case is indistinguishable on the issue of the application of Public Act 94-1 to a conviction of an offense which preceded the October 1, 1994 effective date. The sole issue addressed in Taylor was the retroactive application of Public Act 94-1. Such application was upheld as the plaintiff now concedes. Taylor v. Kirschner, supra, 251-52.
The ex post facto claim was not addressed in Taylor and is presented by this appeal. The ex post facto clause of the constitution "applie[s] only to penal statutes which disadvantage the offender affected by them." Collins v. Youngblood,497 U.S. 37, 41 (1990). "Ex post facto" is a term of art applicable only to punishment in the form of legislative action that: 1) retroactively punishes as a crime an act previously committed, which was innocent when done; or 2) makes more burdensome the punishment for a crime, after its commission; or 3) deprives one charged with crime of any defense available at the time when the act was committed. Beazell v. Ohio, 269 U.S. 167, 169-70 (1925). "The Beazell formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause . . ."Collins v. Youngblood, supra, 497 U.S. 43. CT Page 12059
In the present case, the statute at issue, Public Act 94-1, does not impact the first and third Beazell categories. There is no issue in this case of retroactively viewing as a crime an act innocent when done, nor is there deprivation of any defense. The second Beazell category raises the question whether depriving the plaintiff of a pistol permit as a consequence of his earlier assault conviction retroactively increases the punishment for a criminal act. "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of `disadvantage' . . . but on whether any such change . . . increases the penalty by which the crime is punishable."California Dept. of Corrections v. Morales, 514 U.S. 499, 506-07
n. 3 (1995).
The issue can be framed, as whether the permit disqualification is punishment for the earlier crime or is it intended to accomplish some other legitimate governmental purpose. See Trop v. Dulles, 356 U.S. 86, 96 (1958). In making the determination as to whether the law is penal and thus subject to ex post facto analysis, the focus is on the legislative intent. Hawker v. New York State, 170 U.S. 189 (1898). In Hawker, a physician convicted of the then felony crime of abortion in 1878 lost his license to practice medicine under a 1893 law, which prohibited convicted felons from the profession. The court found no ex post facto prohibition, since the 1893 law was intended to set qualifications for medical doctors. In De Veau v.Braisted, 363 U.S. 144 (1960), an ex post facto challenge was rejected as to a New York State law prohibiting unions from collecting dues from waterfront workers if any officer or agent of the union was a felon. The application of the law to persons with previous felony convictions was upheld because "New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation." De Veau v. Braisted, supra, 160.
Ex post facto challenges have failed in cases involving even unusually harsh penalties. See Flemming v. Nestor, 363 U.S. 603
(1960) (the challenged law terminated vested social security benefits of persons deported for communist activity); Galvan v.Press, 347 U.S. 522, 531 (1954) (involved a statute required deportation for prior membership in the Communist party); Postmav. International Brotherhood of Teamsters, 337 F.2d 609 (2d Cir. 1964) (concerned a statute which prohibited union office for a person previously convicted of extortion); Manocchio v. Kusserow,961 F.2d 1539 (11th Cir. 1992) (regarding doctors convicted of CT Page 12060 filing false Medicare claims and subsequently barred from Medicare participation).
Recently, in Kansas v. Hendricks,117 S.Ct. 2072 (1997), an ex post facto clause challenge was rejected as to a statute authorizing the involuntary commitment of "mentally abnormal" persons previously convicted of sex crimes. Also, inDoe v. Pataki, 120 F.3d 1263 (2nd Cir. 1997) and Roe v. Office ofAdult Probation, 125 F.3d 47 (2nd Cir. 1997), "Megan's Laws"[3]
enacted in New York and Connecticut withstood similar challenges.
The plaintiff urges the court to consider the revocation from his subjective view. However, the Supreme Court has noted that "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the sting of punishment . . ." (Citations omitted; internal quotation marks omitted.) Department of Revenue of Montana v.Kurth Ranch, 511 U.S. 767, 777 n. 14 (1994).
The legislative history[4] of Public Act 94-1 establishes the intent to regulate the possession of handguns. There is simply no evidence of any punitive intent.
The application of Public Act 94-1 to revoke the plaintiff's permit does not contravene the ex post facto clause of the United States constitution.
The plaintiff's final argument arises under Article First, § 15, of the constitution of Connecticut which provides: "Every citizen has a right to bear arms in defense of himself and the State." The plaintiff notes that under State v. Marsala,216 Conn. 150, 160 (1990), the declaration of rights contained in Article First of the constitution of Connecticut are fundamental civil liberties. See also Rabbitt v. Leonard, 36 Conn. Sup. 108,112 (1979). However, it is unquestionably the law that the right to bear arms may be reasonably regulated. State v. Bailey,209 Conn. 322, 346 (1988); Benjamin v. Bailey, 234 Conn. 455, 465
(1995).
In State v. Bailey, supra, the court held: "It is beyond serious dispute that the legislature has the authority to place reasonable restrictions on a citizen's right to bear arms." Statev. Bailey, supra, 209 Conn. 346. This statement appears with respect to the gun permit laws challenged in this case. CT Page 12061
In Benjamin v. Bailey, supra, the court rejected an ArticleFirst, § 15, of the constitution of Connecticut challenge to a ban on certain assault weapons. The court in accepting this limitation relied on authority from other states.
 Our interpretation of our constitutional provision regarding the right to bear arms also is consistent with the precedents of our sister states. State courts that have addressed the question under their respective constitutions overwhelmingly have recognized that the right is not infringed by reasonable regulation by the state in the exercise of its police power to protect the health, safety and morals of the citizenry. See Hyde v. Birmingham, 392 So.2d 1226, 1228 (Ala.Crim.App. 1980), cert. denied sub nom. Ex parte Hyde, 392 So.2d 1229 (Ala. 1981); Robertson v. City County of Denver, 874 P.2d 325, 333 (Colo. 1994); Carson v. State, 241 Ga. 622, 628, 247 S.E.2d 68 (1978); In re Brickey, 8 Idaho 597, 599, 70 P. 609 (1902); Matthews v. State, 237 Ind. 677, 686, 148 N.E.2d 334 (1958); People v. Brown, 253 Mich. 537, 541, 235 N.W. 245
(1931); State v. Fennell, 95 N.C. App. 140, 143, 382 S.E.2d 231 (1989); Arnold v. Cleveland, 67 Ohio St.3d 35, 46-47, 616 N.E.2d 163 (1993); State v. Blocker, 291 Or. 255, 259, 630 P.2d 824
(1981); Webb v. State, 439 S.W.2d 342, 343
(Tex.Crim.App. ), cert. denied, 396 U.S. 968, 90 S.Ct. 450, 24 L.Ed.2d 434 (1969); State v. McAdams, 714 P.2d 1236, 1237 (Wyo. 1986). States with recently enacted constitutional guarantees of the right to bear arms typically have followed this interpretation as well. See State v. LaChapell, 234 Neb. 458, 460, 451 N.W.2d 689 (1990); State v. Dees, 100 N.M. 252, 255, 669 P.2d 261 (N.M.App. 1983); State v. Ricehill, 415 N.W.2d 481, 483
(N.D. 1987); Princeton v. Buckner, 180 W. Va. 457, 467, 377 S.E.2d 139 (1988); cf. Kalodimos v. Morton Grove, 103 Ill.2d 483, 491-92, 470 N.E.2d 266 (1984) (right subject to textual limitations); State v. Hamlin, 497 So.2d 1369, 1371 (La. 1986) (same); but see State v. Smith, 132 N.H. 756, 758, 571 A.2d 279 (1990) (felon in possession statute "narrowly serve[s] a significant government CT Page 12062 interest").
(Footnote omitted.) Benjamin v. Bailey, supra, 234 Conn. 467-68.
Plaintiff cites no authority where a similar state constitutional right has prohibited a permit for handguns statute. In Benjamin v. Bailey, supra, the court, in finding no intrusion on the right to bear arms, did not determine the level of judicial scrutiny to be applied in determining an Article First, § 15 challenge; however, as noted above, authority for reasonable regulation was cited with approval.
The limitation of handgun permits to persons not previously convicted of assault in the third degree is an exercise of police power to protect the health and safety of the public. See legislative history supra note 4, p. 6.
The plaintiff fails to establish that Article First, § 15, of the constitution of Connecticut "confers on him an individual constitutional right to carry a pistol or revolver."[5] See State v. Banta, 15 Conn. App. 161, 184
(1988). The plaintiff also fails to cite authority where a similar regulation under similar constitutional provisions has been subjected to strict scrutiny.
Connecticut authority recognizes that the right to bear arms is subject to reasonable regulation. State v. Bailey, supra,209 Conn. 346; Benjamin v. Bailey, supra, 234 Conn. 467; State v.Banta, supra, 15 Conn. App. 184. Authority from other states recognizing reasonable restrictions on the right to bear arms has been cited with approval. Benjamin v. Bailey, supra, 467-68;State v. Banta, supra.
The prohibition of permits to carry a pistol or revolver to a person convicted of a class A misdemeanor assault is a narrowly drawn restriction designed to further substantial state interests in public safety. It is a legitimate exercise of police power.
The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.