STATE OF CONNECTICUT *v.* KEITH M. COMMERFORD
(10475)

LAVERY, LANDAU and FREEDMAN, Js.

---

[9] We decline to address separately the defendant's state constitutional claim; see footnote 7, supra.

Argued December 7, 1992—decision released January 12, 1993

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert A. Lacobelle,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and attempted assault in the

first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1).[1] On appeal, the defendant claims that (1) the trial court failed to instruct the jury properly with respect to the intent required to commit a criminal attempt, (2) the trial court improperly failed to give the defendant's requested instruction on witness credibility, and (3) the state failed to prove beyond a reasonable doubt that the defendant committed an attempted assault in the first degree. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On September 28, 1989, the defendant and some friends were at a party given by a University of Bridgeport fraternity. At approximately 11:30 p.m., immediately after he had had a confrontation with a female guest, the defendant headed toward the alleyway leading away from the location of the party. James Piccione, a fraternity member, was standing near the same alleyway. As the defendant was walking past Piccione, the defendant hit Piccione in the shoulder with his shoulder. After a hostile exchange of words, the defendant walked a few more steps away from Piccione, pulled out a revolver and shot Piccione in the upper left arm from a distance of about ten feet.

After the shot was fired, the defendant ran. Lenny Massa and Steven Nargizian, both fraternity members, began to chase the defendant. Twice during the chase, the defendant turned to fire a shot at them. Two other partygoers, David Heitner and Greg Petimezian, got into Heitner's pickup truck and drove around looking for the defendant. Heitner stopped the vehicle to allow

[1] Before the case was submitted to the jury, the defendant pleaded guilty to one count of carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b) and one count of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217 (a). The judgment rendered with respect to those offenses is not challenged on this appeal.

Massa and Nargizian to jump into the back of the truck. Massa pointed out the defendant, and Heitner started to follow him. Heitner drove his truck on the sidewalk directly in front of the defendant. The defendant, who was then about seven to eight feet away, took out the gun, aimed it toward the truck and fired. The bullet struck Massa in his chest. Despite medical efforts to save his life, Massa died at 12:25 a.m. on September 29, 1989, as a result of a gunshot wound to his heart, left lung and liver.

The defendant first claims that the trial court did not properly instruct the jury regarding the intent requirement of our criminal attempt statute, General Statutes § 53a-49. Section 53a-49 (a) (2) provides that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) *intentionally* does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." (Emphasis added.) In conjunction with the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[2] the state was required to prove that the defendant in this case, acting with intent to commit serious physical injury, did intentionally engage in conduct by means of a deadly weapon that was planned to bring about that result. The defendant claims that the trial court failed to apprise the jury of the second intent requirement, namely, that the act constituting a substantial step in a course of conduct planned to culminate in the assault had to be intentional.

---

[2] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

Since the defendant has not preserved this claim for appellate review, "we will review [it] under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the claim is one which goes to the improper instruction of an element of the crime, and the record is sufficient for such a review." *State* v. *Gonzalez,* 25 Conn. App. 433, 441 n.4, 596 A.2d 443 (1991), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992). We conclude, however, that this claim must fail because the defendant cannot show that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding,* supra, 240.

The trial court adequately explained to the jury that the conduct that is claimed to be a substantial step toward the commission of the assault had to be intentional. "Now, in this case, [the defendant] is charged with an attempt to commit [assault in the first degree]. Our statute defines an attempt to commit the crime. It is not necessary that the crime be committed. Our statute provides, insofar as it applies here, that a person is guilty of an attempt to commit a crime if acting with the kind of mental state required for the commission of that crime he *intentionally* does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in the course of conduct planned to culminate in the commission of the crime." (Emphasis added.) Later in its instructions, the court noted that it was "necessary that the state prove that [the defendant] acted intentionally," it explained that to be a substantial step in a planned course of conduct the defendant's "conduct must be strongly corroborative of his criminal purpose, his criminal intent," and it summarized the state's claim that the defendant "pulled the gun and fired it, and it was his intent to commit an assault inflicting serious injury upon Piccione with

a deadly weapon." These instructions clearly apprised the jury of the fact that it was necessary that they find the defendant's conduct in firing the gun to be intentional. In this case, where the defendant was charged with attempted assault and the evidence revealed simply an altercation and a shooting, "the only relevant question was whether the defendant, with the intent to cause the victim's [serious physical injury], had taken a substantial step, strongly corroborative of his purpose, in a course of conduct planned to culminate in the accomplishment of his intended result." *State* v. *Gonzalez,* 222 Conn. 718, 725, 609 A.2d 1003 (1992). The trial court's instructions, therefore, encompassed all the elements necessary to constitute criminal attempt to commit assault in the first degree pursuant to §§ 53a-49 (a) (2) and 53a-59 (a) (1).

Contrary to the defendant's argument, the court did inform the jury that the conduct constituting the substantial step had to be intentional. That elsewhere in its instructions on criminal attempt the court may have emphasized the requirement that the state prove that the defendant intended to cause serious physical injury to Piccione did not negate its explicit instruction that the jury must also find the defendant's conduct to have been intentional. This is especially so here since the disputed issue at trial was the defendant's state of mind when he fired the shot that injured Piccione, not whether that act was intentional. The defendant seeks to have us read portions of the court's instructions in isolation from the entire charge. This we will not do. See, e.g., *State* v. *Toczko,* 23 Conn. App. 502, 507, 582 A.2d 769 (1990). In our view, the court's instructions on the elements of criminal attempt, taken as a whole, presented the case to the jury fairly and accurately, such that no injustice was done. Id. Accordingly, we find no merit in the defendant's claim.

The defendant next argues that the trial court improperly failed to give the following portion of one of his written requests to charge: "No fact should be determined merely by the number of witnesses testifying for or against it. You should be interested primarily in the quality of the testimony offered rather than by quantity." While it is clear that the requested instruction is a correct statement of law and relevant to the issues in the case,[3] "the trial court is not required to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request." *State* v. *Bunker,* 27 Conn. App. 322, 328, 606 A.2d 30 (1992). "[T]he test is whether the court's instructions properly covered the substance of the written request." *State* v. *Watlington,* 216 Conn. 188, 198, 579 A.2d 490 (1990); *State* v. *Dickerson,* 28 Conn. App. 290, 294, 612 A.2d 769 (1992). Under this standard of review, we conclude that the trial court properly discharged its duty to instruct the jury in a manner calculated to give a clear understanding of the issues presented for their consideration.

The trial court here instructed the jury extensively on the subject of credibility of witnesses. Throughout its instructions on witness credibility, the trial court stressed the evaluative or weighing process to be used by the jurors in determining the facts and emphasized that the determination of the truth is an evaluation of the quality of a witness' testimony. Moreover, the court stressed the importance of considering "all the evidence you hear from all the different witnesses, and then you decide as to the credibility of the witnesses and decide what portion, all, some or none of any particular witness' testimony you will believe based on those principles." Although the trial court did not specifically state

---

[3] At trial, the state called sixteen witnesses to testify. Only two witnesses testified on behalf of the defendant.

that quality, not quantity, of witness testimony was critical to the factfinding process, "[t]he instruction[s] actually given by the trial court accurately conveyed the same theme." Id., 295. It is, therefore, not reasonably possible that the jury was misled.

The defendant's final claim is that the state failed to prove beyond a reasonable doubt that he committed the crime of attempted assault in the first degree in violation of General Statutes § 53a-59 (a) (1). Specifically, the defendant argues that the evidence was insufficient to prove his intent to inflict serious physical injury to Piccione and to prove that he intentionally engaged in conduct to carry out that intent.

"The record discloses that the defendant made a motion for judgment of acquittal at the close of the state's case pursuant to Practice Book § 884. The trial court denied this motion. The defendant then proceeded to offer evidence on his own behalf. Under the existing rules, when a defendant elects to put on evidence after a denial of his motion for judgment of acquittal at the end of the state's evidence, he is deemed to have waived his right to appellate review as to the sufficiency of the evidence at the completion of the state's case. *State* v. *Booker,* 28 Conn. App. 34, 41–42, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992); *State* v. *Kari,* 26 Conn. App. 286, 291, 600 A.2d 1374 (1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992). Thus, the defendant's claim with regard to the sufficiency of the evidence at the completion of the state's case is not reviewable. *State* v. *Booker,* supra, 41." *State* v. *Wolff,* 29 Conn. App. 524, 527–28, 616 A.2d 1143 (1992).

"We thus review the entirety of the evidence taking into account both the evidence offered by the state and that offered by the defendant. *State* v. *Kari,* supra. We review all of the evidence presented in the light most

favorable to sustaining the verdict. *State* v. *Dunn,* 26 Conn. App. 114, 124, 598 A.2d 658 (1991). We then determine whether, on the facts thus established and the inferences reasonably drawn therefrom, the jury could have reasonably concluded that the cumulative effect of the evidence established the guilt of the defendant beyond a reasonable doubt. *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985); *State* v. *Dunn,* supra. We must also keep in mind that the defendant attacks the sufficiency of the evidence with respect to a single count only, the charge that [he intentionally attempted to inflict serious physical injury on Piccione with a deadly weapon]. We afford great deference to findings of fact consistent with guilt unless they are improbable and unconvincing. *State* v. *Osman,* 218 Conn. 432, 437, 589 A.2d 1227 (1991)." *State* v. *Wolff,* supra, 528–29.

The defendant contends that "[t]he sole evidence presented by the state to prove the requisite intent and act for the attempted assault was the testimony elicited from James Piccione, the victim. Yet, an examination of his testimony fails to provide any, let alone sufficient, evidence of the defendant's intent or of the substantial step. And, when the testimony of the only other witness to the shooting of Piccione, Steven Nargizian, is examined, the defendant maintains that a contrary conclusion as to the proof of these essential elements is reached." We do not agree.

"Ordinarily, the intent of the actor is a question for the trier of fact. . . . It is axiomatic that a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." (Citations omitted; internal quotation marks omitted.) *State* v. *Allen,* 28 Conn. App. 81, 89–90, 611 A.2d 886, cert. denied, 223

Conn. 920, 614 A.2d 826 (1992). " 'Further, when the conclusion is one that is dependent on the resolution of conflicting testimony, it should ordinarily be left to the jury for its judgment.' " *State* v. *Bewry,* 26 Conn. App. 242, 246, 600 A.2d 787 (1991), cert. denied, 221 Conn. 911, 602 A.2d 11 (1992), quoting *State* v. *Turner,* 24 Conn. App. 264, 268, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991).

The defendant's argument to the contrary notwithstanding, it was not necessary for the state to prove that the defendant deliberately aimed the firearm. *State* v. *Washington,* 15 Conn. App. 704, 716, 546 A.2d 911 (1988). Here, the evidence showed that defendant hit Piccione in the shoulder and a loud exchange of words ensued. When the gun was fired, the defendant was holding it out in front of him. Piccione and the defendant were ten feet apart and, according to Piccione, no one was between them. Piccione was shot in the upper arm by the same person who killed Lenny Massa with one shot shortly thereafter. On the basis of all the evidence, then, we conclude that the jury had before it sufficient evidence to permit it to find beyond a reasonable doubt that the defendant intended to cause serious physical injury to the victim and that the defendant intentionally fired the gun in order to carry out that intent. Cf. *State* v. *Nixon,* 13 Conn. App. 824, 538 A.2d 1064 (1988) (evidence that the defendant had a hostile conversation with the victim, and that the victim saw the defendant point a gun at him, and watched the defendant shoot him, resulting in the victim's hospitalization, was sufficient to support a conviction for intentional assault in first degree). Accordingly, the defendant's conviction of attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1) must stand.

The judgment is affirmed.

In this opinion the other judges concurred.