STATE OF CONNECTICUT *v.* ROBERT MADAGOSKI
(AC 18789)

Landau, Schaller and Spear, Js.

Argued April 28—officially released August 15, 2000

*Francis L. O'Reilly,* special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Robert Madagoski, appeals from the judgment of conviction, rendered after a jury trial, of one count of attempt to commit assault

in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), one count of assault on a peace officer in violation of General Statutes § 53a-167c (a) (1) and one count of larceny in the second degree in violation of General Statutes § 53a-123 (a) (1). The defendant was sentenced to an effective term of forty-five years incarceration.[1] He claims that the court improperly (1) failed to grant his motion for a judgment of acquittal on the count of attempt to commit assault in the first degree, (2) charged the jury on reasonable doubt and thus violated his federal and state constitutional rights to due process and a fair trial, (3) exercised its discretion in denying his motion for a bill of particulars and (4) excluded certain evidence and thus denied him his constitutional right of confrontation. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 11, 1997, Sergeant Thomas W. Guyette, a twenty-two year veteran of the state police who was assigned to the Connecticut auto theft task force (task force),[2] was in Bridgeport to attend a meeting with chiefs of police. Prior to the meeting, Guyette dispatched the members of his task force group to patrol the streets of Bridgeport in search of motor vehicles that had been reported stolen within the last twenty-four hours. At approximately 11 a.m., while he was in the meeting, Guyette was contacted by John Pribesh, a Bridgeport police department detective, who reported that three stolen vehicles had been located in the vicinity of Anson and North Main Streets.

Guyette, who was dressed in a business suit, met with members of the task force at the intersection of

---

[1] The defendant was found to be a persistent dangerous felony offender and was sentenced pursuant to General Statutes § 53a-40 (b) and (g).

[2] The task force was comprised of state and local police officers.

Anson and Salem Streets, and dispatched the officers in teams of two throughout the area. At about 4:30 p.m., Pribesh informed Guyette that he was following a stolen van on Salem Street and that he thought that the driver knew he was a police officer.[3] Guyette ordered Leonard Schroeder, a Fairfield police department detective, to help him and Pribesh box in the van at the intersection of Salem and Main Streets.[4] Guyette and Schroeder blocked the intersection.

Before he got out of his vehicle, Guyette placed his police badge on the breast pocket of his coat and called the Bridgeport police department for help. When he got out of his vehicle, Guyette ran toward the van shouting, "Police, stop!" The defendant, the van's sole occupant,[5] moved the van toward Guyette and struck him on the left side. Guyette jumped over the hood of the van and landed between Schroeder's vehicle and the van. The van struck Schroeder's vehicle, and Guyette grabbed the door handle of the van with his left hand and grabbed his weapon with his right hand. Guyette pointed his weapon at the driver and yelled, "Police, give it up!" He had no intention of shooting the driver; his intent was to stop the vehicle. The van suddenly moved forward, twisting Guyette's leg. Guyette's weapon discharged, shattering the window on the driver's side. As the vehicle accelerated, Guyette was dragged by it and, had he not let go, he would have struck a parked car.

The defendant drove away and was not apprehended until March 7, 1997. At that time, his jacket, which had

---

[3] Members of the task force were operating a variety of unmarked motor vehicles.

[4] Guyette placed his vehicle at an angle in front of the van to prevent it from turning onto Main Street, and Schroeder put his vehicle at an angle in front of the van to prevent it from going straight or turning left. Pribesh was behind the van.

[5] Guyette and Schroeder made in-court identifications of the defendant as the driver of the van.

a bullet hole under the left sleeve and to the rear, was seized. A spent bullet seized from the defendant's trouser pocket was determined to be the bullet that was fired from Guyette's weapon. Additional facts will be discussed as necessary.

## I

The defendant's first claim is that the court improperly failed to grant his motion for a judgment of acquittal on the count of attempt to commit assault in the first degree in violation of §§ 53a-49[6] and 53a-59 (a) (1)[7] because the state failed to establish beyond a reasonable doubt that he intentionally sought to cause serious physical injury to Guyette. In essence, the defendant claims that there was insufficient evidence to convict him. We disagree.

The standards by which we review claims of insufficient evidence are well established. "When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State*

---

[6] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[7] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

v. *Perry*, 48 Conn. App. 193, 196, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . In doing so, we keep in mind that [w]e have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 17–18, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997).

"Intent is generally proven by circumstantial evidence 'because direct evidence of the accused's state of mind is rarely available.' *State* v. *Greenfield*, [228 Conn. 62, 77, 634 A.2d 879 (1993).] Therefore, intent

is often inferred from conduct; id., 76; and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994). "It is axiomatic that a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." (Internal quotation marks omitted.) *State* v. *Commerford*, 30 Conn. App. 26, 34, 618 A.2d 574, cert. denied, 225 Conn. 903, 621 A.2d 285 (1993).

The substance of the defendant's argument is that he could not be convicted of attempt to commit assault in the first degree because Guyette did not suffer a serious physical injury.[8] The state did not charge the defendant with causing Guyette serious physical injury, but rather, charged him with the attempt to cause such injury. The issue for the jury was whether the defendant *attempted* to inflict a serious physical injury. On the basis of our review of the record, we conclude that the jury could have found that the attempted assault occurred when the defendant drove the van at Guyette and attempted to run him over, when he dragged Guyette through the intersection or when he drove toward the parked car while Guyette was holding onto the handle of the driver's door. Driving the van directly at Guyette would have caused serious physical injury if Guyette had not been able to jump on the hood of the van to avoid being sandwiched between it and a police vehicle. Guyette also rolled away from the van when the defendant attempted to drive the van into a parked car. The defendant cannot benefit from Guyette's own actions in minimizing his injuries.

---

[8] " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4).

"We afford great deference to findings of fact consistent with guilt unless they are improbable and unconvincing." *State* v. *Wolff*, 29 Conn. App. 524, 529, 616 A.2d 1143 (1992). We conclude that after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

II

In his second claim, the defendant asserts that the court improperly instructed the jury on reasonable doubt when it stated: "While the state of Connecticut does not desire the conviction of any innocent person, also it does not wish to have a guilty person acquitted. It is the sworn duty of the jury, if and when the evidence presented overcomes the presumption of innocence and proves the accused guilty beyond a reasonable doubt, to enforce the law and render a verdict of guilty." In support of his claim, the defendant cites *United States* v. *Doyle*, 130 F.3d 523, 533 (2d Cir. 1997), in which the United States Court of Appeals for the Second Circuit held that an instruction stating that "you must keep in mind that those rules of law are designed to protect the innocent and not the guilty" diluted the presumption of innocence and reasonable doubt standard.

The state maintains that our Supreme Court in *State* v. *Schiappa*, 248 Conn. 132, 167–77, 728 A.2d 466 (en banc), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999), and *State* v. *Delvalle*, 250 Conn. 466, 470–73, 736 A.2d 125 (1999), and this court in *State* v. *Ryan*, 53 Conn. App. 606, 610–11, 733 A.2d 273 (1999), held that the language found offensive in *Doyle* did not dilute the state's burden of proof if, *when read in conjunction with the charge as a whole*, the jury could not be misled. See *State* v. *Delvalle*, supra, 470–72; *State* v. *Schiappa*, supra, 172–73. Indeed, in the sentence after

the one the defendant finds objectionable, the court told the jury that the state must prove its case beyond a reasonable doubt.

The defendant attempts to distinguish *Schiappa* and *Delvalle*, in which the claims were unpreserved, from the situation in this case in which counsel made a timely objection and preserved his claim for appellate review. We addressed this argument in *Ryan*. "The defendant attempts to distinguish *Schiappa* on the ground that in the present case, unlike in *Schiappa*, the defendant preserved his claim and, therefore, need not rely on *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We, however, are not persuaded because the standard for review under *Golding* of an unpreserved claim is the same as the standard of review of a preserved constitutional claim. *State* v. *Schiappa*, supra, 248 Conn. 175 n.46." *State* v. *Ryan*, supra, 53 Conn. App. 611 n.3. Although the defendant asks us to revisit this question, we decline the invitation because he has failed to give us any compelling reason to do so. See *Kluttz* v. *Howard*, 228 Conn. 401, 406, 636 A.2d 816 (1994).[9] In the case before us, when the challenged language is read in conjunction with the rest of the charge, particularly the court's statement about the presumption of innocence and reasonable doubt, it is clear that the jury was not misled.

### III

In a third claim, the defendant maintains that the denial of his motion for a bill of particulars was so prejudicial as to require a new trial.[10] The defendant

---

[9] The defendant also makes a claim under article first, § 8 of the constitution of Connecticut. We decline to review this claim because he has failed to provide an independent analysis of this state constitutional claim. See *State* v. *Faust*, 237 Conn. 454, 465 n.10, 678 A.2d 910 (1996).

[10] The defendant limits this claim to the first two counts with which he was charged, attempt to commit assault in the first degree and assault in the second degree.

was in possession of the state's disclosure at the time the motion was argued. The disclosure stated that the defendant drove the van at Guyette, that Guyette hung onto the van, and then fell off and injured his leg. The defendant requested, as to the count of attempt to commit assault, specificity as to what conduct, as outlined in the disclosure, created the risk of death and the intent to cause serious injury. As to the assault count, the defendant asked whether it was the same conduct the state would use to prove the attempt to commit assault count. The court ruled that the defendant's request was evidentiary and therefore beyond the scope of a bill of particulars.

"[T]he denial of a motion for a bill of particulars is within the sound discretion of the trial court and will be overturned only upon a clear showing of prejudice to the defendant. . . . *State* v. *Spigarolo*, [210 Conn. 359, 385, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989)]; *State* v. *Laracuente*, [205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988)]. A defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. *State* v. *Rafanello*, 151 Conn. 453, 457, 199 A.2d 13 (1964) . . . . *State* v. *Spigarolo*, supra, 382. . . . *State* v. *Kyles*, 221 Conn. 643, [653], 607 A.2d 355 (1992)." (Internal quotation marks omitted.) *State* v. *McDougal*, 241 Conn. 502, 521–22, 699 A.2d 872 (1997).

The defendant claims that he was prejudiced by the court's refusal to order the state to specify the manner in which he allegedly committed the crime of attempt to commit assault in the first degree. It is undisputed, however, that at the time of the hearing on the motion, the defendant had access to the state's disclosure and

therefore was aware of the acts on which the state would proceed. "[T]his court has on numerous occasions adverted to sources extrinsic to the specific count or information to determine whether the defendant was sufficiently apprised of the offense charged. See, e.g., *State* v. *Frazier*, [194 Conn. 233, 237, 478 A.2d 1013 (1984)] (defendant sufficiently apprised where he had access to state's file, police reports and demonstrative evidence); *State* v. *Beaulieu*, 164 Conn. 620, 626, 325 A.2d 263 (1973) (information supplied by another count, state's attorney and court); see also *State* v. *Moffett*, 38 Conn. Sup. 301, 310, 444 A.2d 239 (1981) (defendant's access to prosecution file)." *State* v. *Spigarolo*, supra, 210 Conn. 384.

Because the defendant here had access to the data in the disclosure and the long form information, he knew the nature of the charges against him. Under the circumstances, we cannot conclude that the court abused its discretion to the prejudice of the defendant.

IV

The defendant's final claim is that the court improperly denied him his constitutional right to confront his accusers when it precluded him from asking Guyette on cross-examination about whether he was the subject of a state police internal affairs investigation concerning the firing of his weapon. The defendant claims that the court's ruling precluded him from eliciting testimony that could have impeached Guyette's credibility. We disagree.

"It is a fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. *Casalo* v. *Claro*, 147 Conn. 625, 630, 165 A.2d 153 (1960); *State* v. *Kwaak*, 21 Conn. App. 138, 150–51, 572

A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990)." (Internal quotation marks omitted.) *State* v. *Suckley*, 26 Conn. App. 65, 73, 597 A.2d 1285, cert. denied, 221 Conn. 901, 600 A.2d 1028 (1991). The court's rulings "will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Rivera*, 40 Conn. App. 318, 324, 671 A.2d 371 (1996).

On cross-examination of Guyette, the defendant asked whether a state police internal affairs investigation had looked into the propriety of Guyette's discharging of his weapon and also whether there had been any suspensions, demotions or terminations as a result of Guyette's firing his weapon. The court sustained the state's objections. Thereafter, the defendant asked the court to review in camera Guyette's personnel file, which the court did and found that there was nothing of relevance in it. The defendant did not object to the court's ruling. Defense counsel asked for a continuance to examine the internal investigation report and to call additional witnesses, if necessary. The court granted the request. The following day, defense counsel had the internal investigation report marked for identification but did nothing more with it.

On appeal, the defendant claims that his questions concerning the internal investigation and demotions, terminations and suspensions went to Guyette's motive, interest and bias in testifying. The flaw in the defendant's argument is that he never established a foundation for either of the questions.

While cross-examination to elicit facts tending to show motive, interest and bias is a matter of right and may not be unduly restricted; *State* v. *Gould*, 241 Conn. 1, 16, 695 A.2d 1022 (1997); "[t]he [c]onfrontation [c]lause guarantees only an *opportunity* for effective

cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." (Emphasis in original; internal quotation marks omitted.) *State* v. *Andrews*, 248 Conn. 1, 11, 726 A.2d 104 (1999). It is axiomatic that the defendant bears the burden of establishing the relevance of the proffered testimony and that unless a proper foundation is established, the evidence is not relevant.

" '[E]very evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error. . . . The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses. . . . In the exercise of his rights, the defendant, as well as the state, must comply with the established rules of evidence and procedure. . . .' *State* v. *Boles*, 223 Conn. 535, 550, 613 A.2d 770 (1992). Excluding certain evidence does not vitiate the defendant's constitutional right to present a defense." *State* v. *Smith*, 35 Conn. App. 51, 57, 644 A.2d 923 (1994). On the basis of our review of the record, we conclude that the court did not abuse its discretion or cause the defendant substantial harm or prejudice in restricting his cross-examination of Guyette.

The judgment is affirmed.

In this opinion the other judges concurred.