******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KENNETH R. CARTER
(SC 19145)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued March 18—officially released August 18, 2015*

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Michael E. Kennedy*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Kenneth R. Carter, appeals from the judgment of the Appellate Court affirming the judgment of conviction of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1) and various other offenses.[1] On appeal, the defendant contends that (1) there was insufficient evidence to establish beyond a reasonable doubt his intent to inflict serious physical injury on another, as required for a conviction of attempt to commit assault in the first degree, and (2) the Appellate Court improperly determined that there was sufficient evidence for a conviction of that offense on the basis of a theory that the state did not pursue at trial, in violation of the theory of the case principle. We conclude that there was sufficient evidence from which the jury could have found that the defendant intended to inflict serious physical injury under a view of the evidence fully consistent with the state's theory at trial. Accordingly, we affirm the Appellate Court's judgment.

The Appellate Court's opinion sets forth the following facts that the jury reasonably could have found. "[O]n October 29, 2008, as Officer Brigitte Nordstrom of the Groton town police department was participating in the execution of a search warrant, she received a text message from one of her confidential informants, Jeffrey Mumford. Mumford advised her that the defendant, whom she had known for many years, was going to 'pop this white dude' at the Time Out Sports Café in Groton (café). When Nordstrom replied to Mumford that if she responded to his tip he might be exposed as a confidential informant, he texted back, 'I don't care, keep me safe.' Nordstrom then called Mumford on his cellular telephone to learn what the defendant was wearing and where he could be found inside the café. . . .

"It was decided . . . that [Nordstrom and Lieutenant James Bee would rendezvous with other officers and] proceed to the café, that Nordstrom and Bee would enter first to spot and make contact with the defendant, and that the other officers, Sergeant Keith Ashbey and Officers William Wolfe and Richard Savino, would enter immediately thereafter . . . . Nordstrom and Bee were both dressed in plainclothes, but were wearing blue shirts with the words 'police' and 'narcotics task force' emblazoned in bright yellow letters on the front and back, respectively. The other officers were all wearing their regular police uniforms.

"After arriving at the café, the team entered as planned . . . . As they entered, Nordstrom, who was carrying her unholstered service pistol to her side . . . quickly spotted the defendant standing at the bar to their immediate left, in the company of two women.

When the officers first saw him, the defendant was leaning against the bar with the left side of his body. As Nordstrom and Bee turned to move in his direction, however, he immediately turned to face them while pulling a small handgun from his right front pants pocket. He raised the gun and pointed it at Nordstrom's midsection. Upon seeing the defendant pull his gun, Nordstrom loudly shouted, 'gun,' then, 'he's got a gun,' to warn her fellow officers, while raising her own gun to point it at him. Bee, who saw the defendant holding something that could have been a gun, also shouted, 'gun,' to alert his fellow officers as Nordstrom ordered the defendant to drop his gun, which he did not do. Instead, the defendant and Nordstrom had a brief stand-off, with their guns pointed at each other but neither attempting to shoot, until the defendant turned away toward the bar, with his gun and both of his hands in front of him and his back to Nordstrom and Bee.

"Wolfe and Savino . . . [immediately rushed toward the defendant and began] struggling with [him] near the bar in an effort to secure his arms from behind. When the defendant continued to struggle with Wolfe and Savino, even after the three of them fell to the floor, Ashbey . . . [pointed his .22 caliber patrol rifle at the defendant and] ordered [him] to show his hands or be shot. Upon making eye contact with Ashbey and seeing the patrol rifle aimed at his back, the defendant finally stopped struggling and submitted to being hand-cuffed. . . .

"[A]fter the defendant was subdued, a search of his clothing revealed a small silver handgun in his right front pants pocket and a cigarette box containing sus-pected drugs in his left front pants pocket. The handgun was a .22 caliber Jennings semiautomatic pistol with five rounds in the magazine but none in the chamber. . . .

"Upon leaving the café, the defendant, who had once played youth basketball on a team that Nordstrom coached, told her ['I would never point a gun at you.']² . . . Thereafter, Savino transported the defendant to the police station for processing. . . .

"The state also presented testimony from James Ste-phenson, a state firearms tool mark examiner. Stephen-son testified that [the gun was operable and that] . . . to prepare [it] for firing, a would-be shooter would have to pull back the slide and release it, causing a cartridge to be transferred from the magazine in the handle of the gun to the chamber. Although this action, known as 'racking the gun,' could be performed in a matter of seconds, it required deliberate action. If the gun was not racked, and thus had no bullet in the chamber, it could not be fired." (Footnotes altered.) *State* v. *Carter*, 141 Conn. App. 377, 379–83, 61 A.3d 1103 (2013).

The record reveals the following additional facts and

procedural history. The defendant was subsequently charged with several offenses, including attempt to commit assault in the first degree. See footnote 1 of this opinion. At trial, the defendant took the stand in his own defense. He admitted that he was in possession of a gun, but claimed that it had been given to him by Mumford earlier that evening and that he had not displayed it. He contended that the officers had mistaken a silver cell phone that had been in his hand for a gun.

During presentation of the state's case, it elicited evidence confirming that no cell phone had been recovered from the defendant at the scene. In addition, the state underscored the obviousness of the officers' status by both eliciting testimony as to the manner in which Nordstrom and Bee had been dressed and entering as full exhibits photographs of their shirts, which showed the word "POLICE" emblazoned on the front in large, bright yellow letters on a dark blue background. In closing argument, the state asserted: "What does the defendant do when he knows that he is now going to be confronted by the police? He pulls a handgun, a handgun that is loaded with five bullets . . . in the magazine. He points the weapon at . . . Nordstrom."

The jury found the defendant guilty on all counts. See footnote 1 of this opinion. The trial court thereafter rendered judgment in accordance with the verdict, and imposed a total effective sentence of twenty years imprisonment, execution suspended after fourteen years, and five years of probation.

The defendant appealed to the Appellate Court, claiming, among other things, that there was insufficient evidence for the jury to find beyond a reasonable doubt that he intended to inflict serious physical injury. *State* v. *Carter*, supra, 141 Conn. App. 384. The Appellate Court rejected the defendant's claims, and affirmed the judgment of conviction. Id., 402. Specifically, the Appellate Court concluded that, under the totality of the circumstances, there was sufficient evidence from which the jury could have found intent. Id., 387–92. In reaching this conclusion, the Appellate Court hypothesized that, because of the defendant's illegal possession of a gun and drugs, the jury reasonably could have concluded that he would not have displayed a gun to the police. Id., 388. The court further opined that the jury reasonably could have concluded that the defendant mistook one of the officers for the "white dude" for whom the defendant was "lying in wait," or mistook the officers for friends of the white dude who had come to aid their friend. Id., 389.

Thereafter, we granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that there was sufficient evidence to prove that the defendant intended to cause serious physical injury as required

to sustain a conviction for [attempt to commit] assault in the first degree . . . ?" *State* v. *Carter*, 308 Conn. 943, 66 A.3d 886 (2013). The defendant claims that the evidence was not sufficient because the mere act of pointing a gun at another person is "too equivocal to permit a rational fact finder to find beyond a reasonable doubt that the defendant intended to cause [a person] . . . serious physical injury." The defendant further claims that, to remedy this deficiency, the Appellate Court improperly relied on a mistaken identity/transferred intent theory that directly conflicts with the theory that the state advanced at trial, in violation of the theory of the case principle.

In response, the state contends that there was ample evidence other than the mere pointing of the gun to prove that the defendant had the requisite intent. The state further argues that the theory of the case principle does not apply to appellate review of the sufficiency of the evidence, but that, even if it does, there is nothing inconsistent between its theory of the case and the Appellate Court's ruling. We conclude that there is sufficient evidence under the theory that the state pursued at trial to sustain the defendant's conviction for attempt to commit assault.

We begin with the general principles that guide our review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

We "assume that the fact finder is free to consider all of the evidence adduced at trial in evaluating the defendant's culpability, and presumably does so, regardless of whether the evidence is relied on by the attorneys." *State* v. *Robert H.*, 273 Conn. 56, 81–82, 866 A.2d 1255 (2005). When the state advances a specific theory of the case at trial, however, sufficiency of the evidence principles "cannot be applied in a vacuum. Rather, they must be considered in conjunction with an equally important doctrine, namely, that the state cannot change the theory of the case on appeal. See, e.g., *Dunn* v. *United States*, 442 U.S. 100, 105–107, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979); *State* v. *Torres*, 47 Conn. App. 205, 218, 703 A.2d 1164 (1997).

"The 'theory of the case' doctrine is rooted in principles of due process of law. . . . In *Dunn*, the United States Supreme Court explained: 'To uphold a conviction on a charge that was neither alleged in an indict-

ment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused.' . . . '[A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.' " (Citations omitted.) *State* v. *Robert H.*, supra, 273 Conn. 82–83.

"[I]n order for any appellate theory to withstand scrutiny under *Dunn*, it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense." (Internal quotation marks omitted.) Id., 83. Thus, in conducting our analysis in the present case, we must analyze "the evidence adduced at trial to determine whether, when considered in light of the state's theory of guilt at trial, the state presented sufficient evidence . . . ." *State* v. *Fourtin*, 307 Conn. 186, 211, 52 A.3d 674 (2012).

We note at the outset that, contrary to the state's contention in its brief, the theory of the case principle binds not only the state, but appellate courts as well.[3] See *Dunn* v. *United States*, supra, 442 U.S. 107. It appears that the Appellate Court's speculative statements regarding the potential target of the defendant's intent ran afoul of this rule.

Although neither the substitute information nor the court's instructions to the jury identified the target of the attempt to commit assault charge, the state's theory at trial clearly identified Nordstrom as the person at whom the defendant's intent was directed. Cf. *State* v. *Fourtin*, supra, 307 Conn. 208–10 (discerning state's theory based on its actions at trial, not information or court's instructions). Both testimonial and documentary evidence underscored the fact that Nordstrom's shirt plainly and obviously identified her as a police officer. The state's closing argument conclusively demonstrates that its theory of the case was that the defendant intended to draw his gun on and shoot Nordstrom, even if he may not have recognized her initially.[4] The state never elicited evidence or argued in support of a theory of mistaken identity or transferred intent. Although the defendant's statement about shooting the "white dude" was admitted without any limiting instruction, the state told the trial court that it was being used merely to establish the basis for the officers' actions.

Nonetheless, although we question why the Appellate Court found it necessary to create a narrative in direct conflict with the one advanced in the state's closing argument, we need not determine whether its rationale violated the theory of the case principle. For the reasons that follow, we conclude that the evidence is sufficient

to demonstrate the defendant's intent under the theory that the state argued to the jury.

In order to sustain a conviction for attempt to commit assault in the first degree, the state must have presented evidence from which the jury reasonably could have found beyond a reasonable doubt that the defendant did something "constituting a substantial step in a course of conduct planned to culminate in his commission of the crime"; General Statutes § 53a-49 (a) (2); namely, assault with the "intent to cause serious physical injury to another person . . . ." General Statutes § 53a-59 (a) (1). Regarding the substantial step requirement, we have held that "[a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime . . . . In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 180–81, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

Regarding the intent requirement, an individual acts intentionally "with respect to a result or to conduct . . . when his conscious objective is to cause such result or to engage in such conduct . . . ." General Statutes § 53a-3 (11). "Intent may be, and usually is, inferred from [a] defendant's verbal or physical conduct [as well as] the surrounding circumstances." (Internal quotation marks omitted.) *State* v. *Ortiz*, 312 Conn. 551, 565, 93 A.3d 1128 (2014). Nonetheless, "[t]here is no distinction between circumstantial and direct evidence so far as probative force is concerned." *State* v. *Osman*, 218 Conn. 432, 436, 589 A.2d 1227 (1991). Moreover, "[i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Ledbetter*, supra, 275 Conn. 543. Finally, we underscore that "intent [can] be formed instantaneously and [does] not require any specific period of time for thought or 'premeditation' for its formation." *State* v. *Cooper*, 227 Conn. 417, 444, 630 A.2d 1043 (1993). "Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Bennett*, 307 Conn. 758, 766, 59 A.3d 221 (2013).

At the outset, we note that although Connecticut appellate courts have not directly addressed the question of whether the mere act of pointing a gun at someone is sufficient to establish intent to inflict serious physical injury beyond a reasonable doubt, there is sup-

port from other jurisdictions that this single act is insufficient. See, e.g., *State* v. *Brooks*, 44 Ohio St. 3d 185, 192, 542 N.E.2d 636 (1989) ("[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant [of a crime that requires the actor to intend to inflict serious physical harm]"); *Commonwealth* v. *Savage*, 275 Pa. Super. 96, 103, 418 A.2d 629 (1980) ("'[p]ointing a gun . . . in . . . a threat to cause serious bodily injury' . . . could not . . . constitute an aggravated assault" [citations omitted]). Contrary to the defendant's contention, however, the present case does not require us to address that question because here there was evidence beyond the mere act of pointing a gun by which the intent element could have been reasonably established.

The following evidence demonstrated the defendant's intent to inflict serious physical injury on Nordstrom. After Nordstrom walked toward the defendant, he turned toward her, raised a gun, and aimed it directly at her midsection. By aiming at Nordstrom's midsection, the defendant targeted an area of her body that would be likely to inflict "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). After aiming the gun, the defendant positioned himself in a shooting stance and put his finger on the trigger guard. Putting one's finger on the trigger is one of the last steps that an individual must take before firing a gun. The defendant then maintained that position for approximately five seconds despite repeated orders to drop the gun. During this standoff, Nordstrom was so sure that the defendant was going to shoot her, a conclusion that she could have formed not only based on training and experience but also her personal knowledge of the defendant, that she "had taken off all the slack on the safety mechanism" from her own gun. When the standoff finally ended and officers closed in on the defendant, he attempted to maintain possession of his gun rather than acquiesce. In light of the defendant's earlier actions, it would not have been unreasonable for the jury to infer that he was attempting to maintain possession of the gun to use it. Even if, however, the defendant abandoned his intention to shoot Nordstrom when he turned away from her, that change would not negate his earlier intention, and the brevity of that intent is irrelevant. See S*tate* v. *Cooper*, supra, 227 Conn. 444.

Additionally, the events that preceded the actual confrontation contributed to the sufficiency of the evidence in the present case. See, e.g., *State* v. *Gary*, 273 Conn. 393, 407, 869 A.2d 1236 (2005) (intent may be inferred from "the events leading to and immediately following the death" [internal quotation marks omitted]); *State* v. *Commerford*, 30 Conn. App. 26, 34, 618 A.2d 574 (intent

to commit assault can be inferred from "events leading up to and immediately following the incident" [internal quotation marks omitted]), cert. denied, 225 Conn. 903, 621 A.2d 285 (1993). Approximately one hour before the defendant's standoff with Nordstrom, the defendant had expressed an intention and willingness to use the gun by threatening to shoot a particular "white dude." We have previously held that "[a]n accused's own words . . . constitute particularly compelling, direct evidence of his intent." *State* v. *Winot*, 294 Conn. 753, 768, 988 A.2d 188 (2010). Although the defendant's statement was directed at someone who presumably was not a police officer, his words are probative of his state of mind. When combined, the evidence of these statements and the defendant's actions provided sufficient evidence from which the jury could have found intent to inflict serious physical injury beyond a reasonable doubt.

Despite the foregoing facts and authority, the defendant contends that certain evidence and case law compel the conclusion that the evidence was insufficient. Most of the defendant's arguments are premised on his contention that this case merely involves the isolated act of pointing a gun at someone. As we have already made clear, we do not agree with that proposition. Nor do we find his related contentions persuasive.

The mere fact that the defendant did not ultimately discharge the gun does not preclude a finding of such intent; indeed, it appears that it was only the show of overwhelming force that persuaded the defendant to relinquish that intent. See *State* v. *Osbourne*, 138 Conn. App. 518, 530–31, 53 A.3d 284 ("[t]he defendant's act of reaching quickly into his pocket and grabbing a cocked and loaded gun while struggling with uniformed police officers who were attempting physically and by verbal command to subdue him reasonably could have been found not only to have been the start of a line of conduct leading naturally to securing the gun and using it to shoot and cause serious physical injury to each of the three officers, but also to have been strongly corroborative of his alleged purpose to engage in such conduct and cause such results, and thus to commit assault in the first degree against each officer"), cert. denied, 307 Conn. 937, 56 A.3d 716 (2012); *Godsey* v. *State*, 719 S.W.2d 578, 580, 583 (Tex. Crim. App. 1986) (intent to kill established when defendant deliberately pulled gun out after seeing police officers, ignored officers' orders to drop gun, and then pointed gun directly at officers). Although the actual firing of a gun provides strong evidence of intent, the absence of such evidence does not automatically render the evidence insufficient. See, e.g., *State* v. *Osbourne*, supra, 531 (finding sufficient evidence of intent to inflict serious physical injury when defendant, who was resisting arrest, partially removed gun from his pocket). As we have previously noted, "[i]t is not one fact, but the cumulative impact

of a multitude of facts which establishes guilt . . . ."
*State* v. *Ledbetter*, supra, 275 Conn. 543.

The defendant also argues that there was insufficient evidence of intent because he never attempted to rack the gun, and thus the gun would not have fired even if he had pulled the trigger. In the first place, the facts of this case do not affirmatively establish that the defendant never tried to rack the gun. The evidence shows that the defendant turned his back to the officers, such that the officers' view of his hands and the gun was obstructed. The defendant could have realized that the gun was not racked, turned away to do so without the officers seeing that the gun had not yet been racked, and, thus, it is possible that the prompt action of the officers in seizing the defendant prevented him from doing so. Moreover, the defendant testified that the gun found in his possession did not belong to him. If the jury credited that statement, it would have been entirely reasonable for it to infer that the defendant did not know that it was necessary to rack the gun.[5] Finally, whether the gun was racked or not seems to be beyond the point. The defendant's claim that he did not rack the gun, even if true, would only support the proposition that he did not take the *next* step to complete the crime which, of course, is irrelevant to the inquiry whether he took a *prior* substantial step to commit the offense. Because the defendant was charged with attempt to commit assault, it was only necessary for him to take a substantial step "under the circumstances as he believe[d] them to be . . . ." General Statutes § 53a-49 (a) (2).

To the extent that the defendant relies on his self-serving statement that he "would never point a gun" at Nordstrom, that statement could have been easily discounted by the jury or merely credited as evidence that the defendant did not initially realize that Nordstrom was the officer he confronted. See *State* v. *Ledbetter*, supra, 275 Conn. 543 ("[T]he [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . [P]roof beyond a reasonable doubt [does not] require acceptance of every hypothesis of innocence posed by the defendant . . . ." [Internal quotation marks omitted.]).

Insofar as the defendant relies on certain appellate decisions in support of his argument, that case law is inapposite. In *State* v. *Dunn*, 26 Conn. App. 114, 124, 598 A.2d 658 (1991), the issue was whether there was evidence of intent to inflict *serious* injury, and it is in that context that the Appellate Court observed: "Although it would have been *permissible* to infer that the defendant did not intend to cause serious injury to [the victim] from the fact that he did not shoot [the victim] despite the opportunity and means to do so, the evidence did not preclude the equally permissible

inference that the defendant intended to cause serious injury to [the victim] by hitting him in the head with the gun as many as six times, causing him to fall to the ground." (Emphasis added.) In *State* v. *Bennett*, supra, 307 Conn. 773, we observed that although the "defendant threatened [the victim's girlfriend] by placing a gun to her head, which conveyed an implied threat to kill her if she did not cooperate, there [was] no evidence from which we [could] infer that [the defendant] intended to follow through on that threat." Significantly, the defendant in *Bennett* fled the scene after making that threat without taking any further step to harm the victim's girlfriend; id., 762; whereas the defendant in the present case was thwarted from taking a further step due to the overwhelming show of force by the armed officers. Moreover, *Bennett* and this case involve fundamentally different questions. In *Bennett*, we considered whether the defendant's act of pointing a gun at the victim's girlfriend constituted evidence that the defendant had the intent to kill the victim, who previously had been shot by the defendant's associate.[6] Id., 773–74.

In sum, we conclude that there was sufficient evidence from which the jury could have found beyond a reasonable doubt that the defendant intended to inflict serious physical injury on another.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The defendant also was convicted of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), criminal possession of a pistol in violation of General Statutes (Rev. to 2007) § 53a-217c (a) (1), carrying a pistol without a permit in violation of General Statutes § 29-35 (a), possession of crack cocaine in violation of General Statutes § 21a-279 (a), possession of marijuana in violation of § 21a-279 (c), criminal violation of a protective order in violation of General Statutes (Rev. to 2007) § 53a-223, and threatening in the second degree in violation of General Statutes § 53a-62 (a) (2). Those offenses are not at issue in this certified appeal.

[2] The Appellate Court opinion appears to have relied on the defendant's testimony, in which he claimed that he had said: "I would never pull a gun out on you." See *State* v. *Carter*, 141 Conn. App. 377, 382, 61 A.3d 1103 (2013). However, Nordstrom and Ashbey testified that the defendant had said that he would not have pointed a gun at Nordstrom. We adopt the officers' versions of the statement because we presume that the jury would have found them more credible.

[3] The theory of the case principle can also be violated if the state establishes and seeks to convict a defendant on facts that differ from those in the information. See *Dunn* v. *United States*, supra, 442 U.S. 105. Such a variance can only be achieved by the state's actions, and obviously does not apply to appellate courts.

[4] The fact that, shortly after his arrest, the defendant threatened to inflict physical injury on one of the arresting officers if he later saw that officer— an incident that led to the defendant's conviction of threatening in the second degree—also casts doubt on the Appellate Court's hypothesis that the defendant would not have intentionally pulled his gun on a police officer.

[5] We note that the defendant merely needed to have possession, not ownership, of the gun in order to be convicted of the other firearms related offenses. See footnote 1 of this opinion.

[6] Just as this case law is inapposite, so too is the defendant's contention that a finding of intent in the present case is inconsistent with Connecticut's statutory scheme. Specifically, the defendant points to the fact that Connecticut criminalizes the act of pointing a gun at someone under less serious crimes; see, e.g., *State* v. *Wayne*, 60 Conn. App. 761, 766–67, 760 A.2d 1265

(2000) (evidence not insufficient to support conviction for threatening, reckless endangerment in first degree, and breach of peace after defendant pointed loaded gun at victim's head); and that our assault statute implicitly recognizes that a person may not intend to inflict *serious* physical injury on someone even when they shoot them. See General Statutes § 53a-59 (a) (5) (stating that person is guilty of assault in first degree if "he causes [*physical*] injury to such person or to a third person by means of the discharge of a firearm" [emphasis added]). Our reasoning as to the evidence in *this* case renders unnecessary any further response to these contentions.

———————————————————